## The People v. McCallum.

1. CONSTITUTION: *Title of bills.* Section 19 of article 2 of the constitution, does not require that the title of a bill shall contain an abstract of the bill, nor set out the particulars of the amendment. The Legislature may select its own title, although it may not be the most suitable or comprehensive.

2. ——: *Recital of the provision amended.* An act amendatory of a former statute need not recite the provision changed.

3. ——: *Mistake in such recital.* If the former provision which is amended, be recited in the new enactment, and a mistake in such recital be made, it does not render the new act void as in contravention of this clause of the constitution.

4. BONDS OF COUNTY CLERKS: *Assuming duties of clerks of District Courts.* The statute making county clerks, *ex officio* clerks of the District Court in their respective counties, does not require of them bonds in their character of court clerks, separate or additional to such as they give as county clerks.

5. QUO WARRANTO: *Demand.* If such additional bond were required, a county clerk would not be excluded from performance of his duties as clerk of the court, because he had neglected to give the additional bond, unless demand that he do so were first made upon him in that behalf.

6. ——: *Answer.* An allegation in an answer to an information in the nature of a *quo warranto*, that the defendant had given a bond " for the faithful performance of all the duties required by law of him in consequence of his said election to the office " in question, is a sufficient allegation that he has given the bond required by law.

7. ——: *Pleading.* A pleading which is ambiguous is not for that reason liable to demurrer. The proper remedy is motion to make it more certain.

This was an information filed in the District Court of Otoe county, to try the right of the defendant to exercise the duties of clerk of the said court. The information was as follows :

" And now comes O. B. Hewett, prosecuting attorney for the First Judicial District of the State of Nebraska, comprising the county of Otoe, and at the relation of Guy

THE PEOPLE *v.* McCALLUM.

A. Brown, exhibited to this honorable court an information in the nature of a *quo warranto*, and states that one George R. McCallum, the defendant, has usurped, invaded, and intruded into, and unlawfully holds and exercises the office of clerk of the District Court in and for the county of Otoe and State of Nebraska, and that the said George R. McCallum, the defendant, has no right or authority to hold said office.

And your petitioner further states, that the said George R. McCallum is the county clerk of said county of Otoe, and by virtue thereof claims that he is *ex officio* clerk of the District Court of said county, and entitled to the custody and control of the books, papers, records and seal belonging and appertaining to said District Court, and to exercise all the functions and to perform and execute all the duties devolving upon the clerk of said District Court. But your petitioner states that the said George R. McCallum, as such county clerk, is not *ex officio* clerk of said District Court, and is not entitled to the care, custody and control of the books, papers, records and seal thereof, and is not entitled to exercise the functions, and to perform and exercise the duties of clerk of said District Court, and that the acts of the said George R. McCallum in usurping, invading, holding, exercising and taking possession of the office of clerk of the District Court of said county, and of the books, papers, records and seal thereof, and in exercising the functions, and in performing and exercising the duties of clerk of said District Court, is contrary to and in violation of the constitution and laws of the State of Nebraska.

And your petitioner further states, that the said George R. McCallum, although he now holds possession of the office of clerk of said District Court, and exercises the functions, and performs and exercises the duties of said office, yet he, the said George R. McCallum, has failed and

neglected to give bond as clerk of said District Court, as required by law.

And your petitioner further states, that on the tenth day of November, A. D. 1869, the said Guy A. Brown was duly appointed the clerk of the said District Court by the Hon. O. P. MASON, Chief Justice of the State of Nebraska, and Judge of the First Judicial District, comprising the county of Otoe, and that therefore the said Guy A. Brown afterwards, to wit, on the twelfth day of November, A. D. 1869, entered into a bond to the People of the State of Nebraska, in the sum of three thousand dollars, with good and sufficient security, conditioned for the faithful performance of the duties of said office, which said bond was on the day and year last aforesaid, duly approved by the Honorable O. P. MASON, Chief Justice and District Judge as aforesaid, and has duly qualified as such clerk; and that therefore the said Guy A. Brown became, and was and now is, entitled to the care, custody and control, of all the books, papers, records and seal of said District Court, and to exercise the functions, and to perform and execute all the duties of clerk of said District Court.

And your petitioner states that afterward, to wit: on the twelfth day of November, A. D. 1869, the said Guy A. Brown, at Nebraska City, in the said county of Otoe, demanded of the said George R. McCallum, the possession, custody and control of all the books, papers, records and seal belonging and pertaining to said District Court, and to allow and to permit him, the said Guy A. Brown, to exercise the functions, and to perform and execute all the duties of clerk of said District Court, all of which the said George R. McCallum refused to do, and still holds possession of said office, and all the books, papers, records and seal thereof, and still claims to be such district clerk, and to exercise all the functions, powers

THE PEOPLE *v.* MCCALLUM.

and duties incident thereto, and to the prejudice and against the lawful rights of said Guy A. Brown.

Wherefore, your petitioner prays for a judgment of ouster against the said George R. McCallum, and that he be altogether excluded from the office of clerk of said District Court, and for such other and for further judgments and orders as to this court shall seem proper to prevent said defendant from usurping, intruding or invading into, or unlawfully holding, or exercising, or executing said office."

To this information there was filed an answer as follows :.

"And now comes the said George R. McCallum, defendant as aforesaid, and denies that the said defendant usurps, invades or intrudes into, or unlawfully holds or exercises the office of clerk of the District Court in and for the county of Otoe aforesaid. But, on the contrary thereof, this defendant alleges that by virtue of his office he, this defendant, has good right and lawful authority to have, hold and exercise the office of clerk of said District Court, and that no other person whatsoever has any right or title to said office. And said defendant further alleges and says, that on the second Tuesday in October, A. D. 1867, he, this defendant, was duly elected county clerk by the qualified voters of Otoe county aforesaid, and gave bond, and in all respects qualified himself for holding said office and for the discharge of the duties thereof. And being county clerk as aforesaid, this defendant on the fourth day of July, 1869, by the law of the land, became *ex-officio* clerk of the District Court in and for the county of Otoe aforesaid, and bound to perform all and singular the duties of the clerk of said District Court, and entitled to receive all and singular the emoluments of said office. And said defendant, George R. McCallum, being by operation of law, *ex-officio* clerk of said District Court, the said Guy A. Brown made application to this

defendant to become, and did become, by appointment of this defendant, deputy clerk of said District Court under this defendant, and on the 24th day of July, A. D., 1869, gave bond in the penal sum of five thousand dollars, with good and sufficient security, conditioned for the faithful performance of his duties as deputy of this defendant. And afterwards, to wit : On the twenty-seventh of July, 1869, the said Guy A. Brown made solemn oath that he would faithfully and impartially perform the duties of deputy district clerk in and for said county of Otoe, and had the same endorsed on said bond, as by reference thereto will more fully and at large appear. Wherefore, said Guy A. Brown ought not to be permitted or allowed in a court of law to dispute the title of this defendant to be clerk of said District Court, but ought to be estopped from so doing.

And this defendant, George R. McCallum, further alleges and says, that on the second Tuesday in October, 1869, the said George R. McCallum, by the qualified voters of said Otoe county, was duly elected county clerk of said county ; and within the time prescribed by law, the said George R. McCallum took the oath prescribed by law, and gave bond in the penal sum of six thousand dollars, with Jacob Blum, James Smith, and W. H. H. Waters, as his sureties, the date of which is the eighteenth day of October, 1869 ; which said bond was conditioned for the faithful performance of all the duties required by law of said George R. McCallum, in consequence of his said election and the same, and the sureties therein were approved by the Probate Judge of said Otoe county, and lodged in his office, as by reference thereto will more fully and at large appear.

And by virtue of said election, the said George R. McCallum became, and was and is, ex officio clerk of the District Court, in and for said Otoe county, in said information mentioned, and is fully entitled to the care, custody

and control of the books, papers, records and seal belonging and appertaining to said District Court, and to exercise all the functions, and to perform and execute all the duties devolving upon the clerk of said District Court, according to the statute in such case made and provided, and the tenor and effect of said bond so executed, approved and filed as aforesaid, and this the said defendant is ready to verify.

Wherefore, he prays judgment that this information in the nature of *quo warranto* be dismissed, and that he, this defendant, recover of said Guy A. Brown his costs in this behalf expended, and go hence without day."

The plaintiff demurred as follows :

"And now comes the said petitioner and plaintiff in the above entitled cause and demurs to the answer filed by the said defendant herein, and states the following causes of demurrer thereto, to wit :

1. The several matters set up in said answer are not sufficient in law to bar the information and action of the said plaintiff.

2. The several matters set up in said answer constitute no defence to the information and action of the plaintiff.

3. Said answer does not state facts sufficient to constitute a defence to the information and action of the plaintiff.

4. Said answer admits that the said relator, Guy A. Brown, was duly and legally appointed clerk of the District Court of Otoe county, in the State of Nebraska, and gave bond and qualified as such, as required by law, and that the said defendant holds and keeps possession of said office, and of the books, papers, record and seal thereof, and exercises the functions and performs the duties and receives the profits and emoluments of said office without any legal authority so to do.

5. Said answer fails to show that the defendant has

taken the oath and given the bond required of the clerk of said District Court.

6. Said answer fails to show that the defendant is entitled to hold said office or to exercise the functions or perform the duties or receive the profits or emoluments thereof.

7. The law under which the defendant claims the right to hold the office of clerk of the District Court aforesaid, and to exercise the functions and perform the duties thereof, is unconstitutional, null and void."

The demurrer was argued before Mr. Justice LAKE, sitting in the District Court for Otoe county. He overruled the demurrer and gave judgment for the defendant, dismissing the information. The cause was removed here by petition in error.

*I. N. Shambaugh* and *E. R. Richardson,* for plaintiff in error.

The plaintiff in error relies upon the following points and authorities to reverse the judgment of the court below:

I. The demurrer to the defendant's answer ought to have been sustained. The answer admits that the relator was duly appointed clerk of the District Court of Otoe county by the judge thereof, and that he gave bond and qualified as required by law, and also admits that the defendant has failed to give bond and qualify as clerk of the District Court.

II. The law under which the defendant claims the office is unconstitutional. The subject of the act is not expressed in its title, and the section amended is not contained in the amendatory act. Section 19, article 2, Constitution of Nebraska.—5 *Ind.* 327 ; 6 *Ind.* 31. Similar decisions have been made in Louisiana. The Legislature of Nebraska, by

THE PEOPLE v. McCALLUM.

its general course of legislation, has given to the Constitution a legislative interpretation similar to that contained in the cases referred to.

III. But if the act in question is constitutional it does not make the county clerk of Otoe county, clerk of the District Court. It does not apply to Otoe county. It only applies to the organized counties in which the terms of the District Court were to be called, and not to those in which the time for holding court was fixed by law.—*Act of* 1869, *sec.* 1, *page* 62.

IV. The act of June 22, 1867, sec. 1, page 92, authorized the judges of the District Court to appoint the clerks of said court. This law is still in force, and the clerk of the District Court is to be appointed by the judge of that court. The act of February 9, 1869, did not repeal the act of June 22, 1867. There is no repealing clause, and the two acts are consistent with each other. Repeals by implication are not presumed or favored, and never allowed unless there is an irreconcilable antagonism or inconsistency between the two acts. If the last act is susceptible of a construction consistent with the first act, that construction must prevail. The impropriety of changing the first law may well be considered in giving a construction to the last act.—*Sedgwick on Statutory and Constitutional Law*, 50, 54, 123, 127, *and* 238.

V. But if the act of February 9, 1869, made the county clerk the clerk of the District Court, he could not act as such without giving bond and taking the oath prescribed by law.—*People* v. *Mayworm*, 5 *Mich.* 146 ; *Respublica* v. *Ray*, 2 *Yates* (*Penn.*) 429. The law requires the clerk of the District Court to give bond.—*Revised Statutes*, 52, *sec.* 38 ; and to take an official oath, *page* 30, *sec.* 17—neither of which was done by defendant. These sections are not repealed.

The bond of the county clerk is conditioned for the dis-

charge of his duties as county clerk only, and does not extend to or embrace the duties of the clerk of the District Court.—*Revised Statutes,* 29, *sec.* 10 *and* 30, *sec.* 18.

VI. But if the bond given by the county clerk was held to extend to and embrace the duties of the clerk of the District Court, it would be inoperative until approved by the judge of the District Court.—*Revised Statutes.* 52, *sec.* 38. If such bond extends to and covers both offices, then it must be approved by the Probate Judge before he can act as county clerk, and by the District Judge before he can act as clerk of the District Court. The defendant's bond, as county clerk, has not been approved by the Judge of the District Court. The approval of the Probate Judge is not binding on the District Court. It is the right and duty of the Judge of the District Court to determine the sufficiency of the bond and sureties of the clerk of his court.

VII. To hold that the county clerk is clerk of the District Court, and that but one bond is required, involves an inconsistency and gross absurdity. The law requires the county clerk's bond to be filed with and kept by the Probate Judge—*Revised Statutes* 29, *sec.* 15 ; and the District clerk's bond to be filed in the District Court—*Revised Statutes* 52, *sec.* 58 ; both cannot be done.

VIII. The defendant, as county clerk, having failed to give bond and qualify as clerk of the District Court, it was the duty of the Judge of the District Court to appoint a clerk of that court, under the act of June 22, 1867, and the District Judge had such power without that statute. The power of every court, or Judge of a Court of Record, to appoint a clerk to make up and keep the records of the court, is a power inherent in the court, and may be exercised without any express statutory provision.

IX. Even if it should be held that the relator has no title to the office, still the defendant cannot hold it without·

showing good title to the same. The proceeding by *quo warranto* is in the nature of a public or criminal prosecution in which the people have an interest, and unless the defendant shows good title to the office, judgment of ouster must go against him.—*People* v. *Mayworm,* 5 *Mich.* 146 ; *Respublica* v. *Ray,* 2 *Yates* (*Penn.*) 429 ; *People* v. *Donnelly,* 11 *Ill.* 552 ; *People* v. *Ridgley,* 21 *Ill.* 66; *Clark* v. *People ex rel.* 15 *Ill.* 217; *Gana* v. *State of Ohio ex rel.* 10 *O. S.* 237

*E. Archibold,* for defendant in error.

The plaintiff in error contends that the act of the 9th of February, 1869, under which defendant in error occupies the office of clerk of the District Court by election, is unconstitutional and void, because in attempting to recite the act of June 22, 1867, a few words are omitted, we suppose, by mistake and inadvertence.

For defendant in error, we contend that counsel on the opposite side mistake the meaning of the 16th section of the second article of our State Constitution : It only requires the new act or section to contain the old one, nothing more. It does not require re-publication at full length of the old repealed statute. If it does, the inadvertent omission of a few words will not vitiate ; and if it does not, then the attempt to recite at all is mere surplusage, and surplusage does not vitiate.

We have to consider the old law, the mischief, and the remedy. Our construction affords us as good a remedy as that of the gentlemen on the opposite side. Is this doubtful ? Doubt acquits an accused statute as effectually as it does an accused individual. *Cincinnati, Wilmington and Zanesville Railroad Company* v. *The Commissioners of Clinton County ;* 1 *Ohio State Rep.,* 84, and the authorities there cited.

THE PEOPLE *v.* McCALLUM.

The 19th section of the 2d article of our constitution is a mere transcript of the 16th section of the 2d article of the constitution of Ohio.

When a provision is adopted from another State, the courts of this State will give it the same construction which it may have received from the highest courts in the State of its origin. *Langdon* v. *Applegate*, 5 *Indiana Reports*, 328.

The compliance with this section of the constitution is secured by the sense of duty and official oaths of the members of the Legislature, and not by any supervisory power of the courts. *Miller & Gibson* v. *Ohio*, 3 *Ohio State Reports*, 481, and subsequent pages.

This section is merely intended to furnish permanent rules for the proceedings of the two houses. *Pim* v. *Nicholson*, 6 *Ohio State Reports*, 179.

The true construction of this provision of the constitution does not require the act or section revised or amended to be recited in full in the reviving or amending act or recited at all, but only that the new act or section shall contain the old act or section, as it purports to amend it. *Lehman* v. *McBride*, 15 *Ohio Reports*, 601, and subsequent pages.

As this provision was first reported to the Ohio Constitutional Convention, it required the old amended act or section to be engrafted into the new act, and published at length. *1st vol. Debates, Ohio Convention, page* 163. But it was committed and recommitted until it assumed its present shape, not requiring such a ceremony. We know of no attempt to recite the old amended act or section in the statutes of Ohio, although amendatory acts are numerous. In the District Court we laid fifteen volumes of Ohio session acts on the counsel table, subject to public inspection, but no instance of the kind was brought to our notice. The one formula is uniformly adopted :

"Be it enacted, &c., &c., that section            of the act for            be so amended as to read as follows."

The practice in the Nebraska Legislature has not been uniform, but the above formula has been adopted in *numerous* instances.

The provisions of the Indiana constitution are essentially different. *Langdon* v. *Applegate*, 5 *Indiana Reports*, 328.

The Indiana constitution requires that the " act revised or section amended shall be set forth and published at full length." *Langdon* v. *Applegate, page* 328 of the above-mentioned volume. The Supreme Court, in that case, decided that the amendatory or revising act must be accompanied by a full and extended republication of the act or section revised or amended. Judge STUART dissented.

In *Littler* v. *Smiley*, 9 *Indiana*, 118, Judge GOODKIN adhered to the decision in *Langdon* v. *Applegate*, but added, " Were this an original question I would not so decide."

An examination of the Indiana reports will make manifest that this minute provision of constitutional law has done but little honor either to the legislative or judicial wisdom of that State. Their reports set up a beacon to warn, not a light-house to allure.

CROUNSE, J.

The grounds, mainly upon which the denial of McCallum's right to exercise the duties and receive the emoluments of clerk of the District Court of Otoe county, is placed, are :

1. The alleged unconstitutionality of the act of February 9, 1869, which takes from the judges of the District Court the authority to appoint clerks of that county, and which makes the county clerks of the several counties, *ex-officio*, such clerks; and,

2. The failure of McCallum to give a bond for the faith-

[S. C. N.]            13

ful performance of his duties of clerk of the District Court, other than that given .as county clerk. '

The unconstitutionality complained of is that the act referred to, was enacted in violation of so much of section nineteen, article two of the State constitution, as declares that, " No bill shall contain more than one subject, which shall be clearly expressed in its title ; and no law shall be revived or amended, unless the new act contain the entire act revived and the sections amended."

With respect to its title : The act contains but one subject, which is, to provide clerks for the District Court. By section one of the act which is amended, such clerks were appointed by the judges of the respective districts. The amendment makes county clerks *ex-officio* clerks of the District Court. This is quite well expressed in the title, " An act to amend section 1 of an act entitled, An act to provide for the appointment of clerks of the District Court, approved June 22, 1867." It is not required that the title should contain an abstract of the bill, nor set out the particulars of the amendment. Whether this requirement of the constitution is designed as a rule for the government of the legislature, an observance of which is enjoined by a sense of duty and the official oath of each member, and not subject to any supervisory power of the courts (3 *Ohio State*, 481 ; 6 *Ib.* 179), it is unnecessary to stop to inquire. The constitution not having fixed the degree of particularity with which a title is to express the subject, it is enough that the legislature, with this provision before them, have selected their own title ; and although we might not agree upon it as the most suitable or comprehensive, the act for that reason is not to be declared void.

The purpose of this provision is to prevent surprise in legislation, by leaving matter of one nature embraced in a bill whose title expresses another.—*State* v. *County Judges of Davis Co.* 2 *Iowa*, 282. There can be no suggestion

of any such deception in the title of the act before us. It is only in cases clearly involving the mischief provided against, that this court should be called upon to declare void the acts of the legislature. Chief Justice OAKLEY of the New York Superior Court, well remarked : " It is not a light thing to set aside an act of the legislature, even when its objections are grave and weighty ; but when they touch, not the substance of the law, or the authority of the legislature to pass it, but are merely criticisms upon its form or phraseology, the exercise of such a power by the judiciary of the State would be prolific of evil, and would soon be universally condemned."—*The Sun Mutual Insurance Co.* v. *The City of New York*, 5 *Sand.* 10.

The further question is presented under this section of the constitution, whether the new act shall contain the section as it stood before amendment, or simply set out the section *as* amended ? The able counsel for the relator contends that the new act must recite the old section and that literally. This construction is rested chiefly upon the case of *Langdon* v. *Applegate*, 5 *Ind.* 328, which, upon a clause of the constitution of Indiana, similar to this, adopt the interpretation insisted upon. The decision of that case was by a divided court, and the opinion published quite meagre and unsatisfactory. It seems never to have challenged respect, but having been announced by the highest court of that State was, for a time, adhered to, not without protest however.

Judge GOODKIN, in a case where he felt constrained to follow, remarked, " Were this an original question I would not so decide."—*Littler* v. *Smiley*, 9 *Ind.* 118. At last, however, the Supreme Court boldly met and overturned *Langdon* v. *Applegate*, in the well considered case of *Greencastle Southern Turnpike Co.* v. *The State ex rel. Malat*, 28 *Ind.* 382. This was a somewhat recent case, and was not cited upon the argument before us.

The People *v.* McCallum.

If the case under consideration were, in my mind, a doubtful one, this action of the Supreme Court of Indiana would go far in resolving it against the plaintiff in error. The inconvenience must be great and the error quite obvious, which would induce the same court to overturn one of its own decisions. "When a rule has once been deliberately adopted and declared," says *Chancellor Kent*, 1 *Com.* 476, "it ought never to be disturbed by the same court, except for very cogent reasons and upon a clear manifestation of error."

The only State, I believe, having a like constitutional provision, which has given it the interpretation here claimed, is Louisiana. Some early cases of that State are referred to, but I have been unable to possess myself of them, to see the reasoning upon which they proceeded. Neither have I been able to advise myself whether, like Indiana, the courts of that State have not reversed these early cases, and relieved themselves from the annoyance and embarrassment attending them.

Judge Cooley, *Constitutional Limitations*, 152, after referring to the rule expressed in these early cases in Indiana and Louisiana, says: "It is believed, however, that the general understanding of the provision in question is different, and that it is fully complied with in letter and spirit, if the act or section revised or amended is set forth and published, as revised or amended, and that anything more only tends to render the statute unnecessarily cumbrous." The construction insisted on, in my judgment, is wanting in reason as well as authority to support it.

As the best light in which to discover the true meaning of this provision of the constitution, let us briefly inquire into the purpose of its institution, and perhaps the mischief it was designed to correct may be as well illustrated by reference to the course of past legislation. Taking up a volume of Territorial Laws nearest me, I open at page 20,

Laws of the Territory of Nebraska, 1867, upon "An Act to amend Section 34, Chapter 46, of the Revenue Law," which does it in the following rather stenographic manner : "Section 1. *Be it enacted by the Council and House of Representatives of the Territory of Nebraska*, that line four, section thirty-four, be amended as follows : Strike out the word "two," and insert the word "five : " that after the word "precinct" in tenth line, insert the word "voting." Several serious objections to this character of legislation are obvious. With terms as blind as this, a bill may be read three different times, as required by the constitution, or a hundred times, and no one, from its reading alone, except he who drafted the bill, or those immediately interested in it, would comprehend its object. Inexperienced and inattentive members would consent to the passage of any bill concerning the object of which they know nothing, when to inform themselves would involve an examination of other laws not readily accessible. Designing men could effect material changes in the most important laws, by deceiving members into the belief, that they were acting upon other and less important subjects. These objections are obviated, besides presenting the law when published in a complete and intelligent form, without necessitating recourse to other volumes as a key, by requiring the new act to contain the section amended, *i. e.*, the section *as* amended. The act above cited, brought into conformity with this constitutonal requirement, would read, (the enacting clause being omitted), that section 34 of chapter 46, of the Revised Statutes be and hereby is amended so as to read : "Section 34. No special, precinct or district school taxes hereafter levied pursuant to any existing law, for the purpose of building or repairing school houses, or for any other purpose, shall exceed in any one year the rate of *five* mills on the dollar," &c. Here, it will be seen, that under the system allowed prior to the

THE PEOPLE *v.* McCALLUM.

adoption of the constitution, an important act, which of itself is senseless, and liable to confound and deceive, is made by a compliance with the constitution, at once intelligible to the legislator, and complete and convenient for him who has occasion to use it.  With the purpose of this provision so fully satisfied by the publication of the law as amended, I can see no good object to be attained by the publication of the old law, while I can discover much embarrassment and mischief likely to arise from it.  The act under consideration is one of the few of the amendatory acts in which it is undertaken to set out the old sections amended.  By the mistake or oversight of him who drafted the bill, or through the carelessness or design of an enrolling clerk, some few words are omitted from what purports to be the old section.  A mis-recital, it is claimed, is equivalent to no recital.  Therefore, under the construction contended for, the act must be declared void, and the will of the legislature defeated, not because they have transcended any authority affecting person or property, or because of any substantial defect in the act, but because of a simple clerical error which is of no importance to the law itself, nor which had the least influence upon its passage.  With legislators intent upon what the law is to be when passed, and naturally indifferent as to what it may have been, such errors must occur frequently, and, under the rule urged here, would prove very damaging to legislation.

Add to this, the appearance of these amendatory acts upon the pages of our statute book; particularly that of a section, which should unfortunately have undergone repeated amendments, and where old obsolete acts must be brought forward and spread out at length, making our laws unnecessarily cumbrous and confused, and imposing additional expense in their publication, and there remains little to

induce a belief that such was ever designed to be the interpretation of this constitutional provision.

I am clearly of the opinion, therefore, for the reasons I have mentioned, and for others that occur to me, that this section of the constituion does not require the recital of the old section in the amendatory act, but that it is satisfied by setting forth the section as amended.

McCallum having been duly elected county clerk of Otoe county, taken the oath of office and given the bond required of him as such, it remains to be considered whether, under a law making county clerks *ex officio* clerks of the District Court, it was required of him to give another and additional bond for the discharge of his duties as clerk of the District Court. Before this act of 1869, the office of clerk of the District Court was a separate and distinct office, the judges of the several judicial districts appointing their own clerks. By section 38, page 52, Revised Statutes, such clerks were required, before entering upon their duties, to give a bond in the sum of three thousand dollars, conditioned for their faithful performance. But under the amended law I do not understand that this bond must be given in addition to that already given as county clerk. It has not been so understood in either of the other judicial districts. In fact, I believe no doubt upon this point ever was suggested until this case arose. Even the relator must, in the first instance, have believed no bond was required, by acting as clerk of the District Court, under a deputyship given him by McCallum. Similar laws have never been so understood. By laws of First General Assembly of the Territory, page 162, the office of register of deeds was created. His bond was fixed at five thousand dollars, page 178. By an act of January 11, 1861, county clerks were made *ex officio* registers of deeds, and empowered to keep the books and perform the duties heretofore belonging to that office, and I will venture to say there is not an instance

where two distinct bonds were ever required, one for the office of county clerk and another for register of deeds. We are pointed to no authority or principle of law supporting the position assumed by the relator's counsel; and in the absence of it, this general understanding had of this law, and of laws similar, by judges, officers and others interested, should go far in settling the interpretation to be given by this court. It is reasonable to suppose the Legislature, in enacting this law, did it in the light of the general construction given to like laws, and that they designed here that the bond of county clerk should extend to his acts as clerk of the District Court. Upon examination, this presumption is not affected by the case of the State Librarian referred to by counsel. Prior to June 22, 1867, the office of State Librarian was a separate office, filled by election at the time of choosing State officers. By act of the Legislature of that date, the Secretary of State was constituted *ex officio* State Librarian. By an act approved two days later, amending the law relating to the amount of bonds for certain State officers, the bond of State Librarian is fixed at five thousand dollars. This, it is urged, is evidence of the fact that the Legislature designed to exact this bond in addition to that required for the discharge of duties as Secretary of State. It is certain that the bill to fix the amount of bond of State Librarian was introduced before the Secretary of State was made *ex officio* Librarian, and by those who know something of the wanderings of a bill through the two houses before its final passage, it will be easily believed that one bill may have been passed in ignorance of and without reference to the other. This is more evident when we see that the act of June 24, makes the Secretary of State the custodian of the bond of Librarian. It is hardly supposable that the Legislature would, knowingly, give the Secretary of State the custody of the bond which was designed as an indemnity against his acts

THE PEOPLE *v.* McCALLUM.

as State Librarian, when by another act passed at the same session, page 129, they fix his bond as Secretary at ten thousand dollars, to be approved by and delivered to the Treasurer of the State. Then again, amid something of a confusion of laws relating to Librarian, beside the act of June 22, page 86, Laws of Special Session 1867, making the Secretary of State Librarian and defining his duties as such, we have by section 5 of another act, page 129, same volume, another law declaring that the Secretary of State shall be State Librarian *ex officio*, and by next section the amount of bond for Secretary of State is fixed. There is no doubt in my mind whatever but the Legislature designed but one bond to be given to cover his acts as Secretary of State proper, and also his duties as Librarian.

But I confess I mistake the purport of the term *ex officio* of McCallum, by virtue of his office, by his election, taking the oath of office, and giving the bond required as county clerk, is not entirely competent and entitled to discharge the duties as clerk of the District Court for Otoe county. Those duties are added to and imposed upon those who hold the office of county clerk. There is no loss of security arising from it. The bond required of county clerks is not to be less than three thousand dollars, and may extend to ten thousand. In this case it was placed at six thousand, and the presumption is that it will be always fixed with reference to all the duties to be discharged. The bond heretofore required was but three thousand of the District Court clerk. It cannot be, as contended, that the bond given for the faithful performance of his duties as county clerk, will not extend to acts done as clerk of the District Court. That he may sign himself in one case as county clerk, and in another as clerk of the District Court, is an immaterial circumstance. His acts are all done under his election and qualification as county clerk, and his bond is given to cover any of them. As well might it be contended

THE PEOPLE v. McCALLUM.

that the official bond of any officer is no security for the want of faithful discharge of any additional duty which may from time to time be imposed upon such officer by law.

To settle any point which might again arise under this law, I have considered the broad question whether county clerks can be required to give any other bond than that given as county clerks before they can demand the right to exercise the duties of clerk of the District Court. This question is not fairly presented by the record in this case, and this point might have been dismissed, in my opinion, with that suggestion. It is alleged simply that McCallum, "failed and neglected," to give the bond contended for; not that he refused so to do. For reasons, some of which I have already alluded to, it may have never occurred to McCallum, that any other bond than that given was required. The very conduct of the relator in accepting and acting for a time under a deputyship given him by the defendant, was calculated to induce that ignorance of such requirement; and before the court undertook to exercise the inherent right of supplying itself with a clerk when none is provided, or before the relator can ask that McCallum be dismissed and himself be instated, it should appear, that by order of court or otherwise, McCallum was required to present his bond for approval, and that he refused so to do. I could not consent to see one driven from an office, in which the partiality of his fellow citizens had placed him, for innocently neglecting to meet a requirement of the law which, perhaps upon the sligthest intimation, would have been cheerfully complied with.

Some further point, if I understood counsel, was sought to be made, that the defendant has not alleged in his answer the making of a proper bond, as county clerk even. After setting out his election in October, 1869, as County Clerk of Otoe county, the defendants answer recites, the making of

THE PEOPLE *v.* McCALLUM.

a bond signed by several persons named, " conditioned for the faithful performance, of all the duties required by law of said George R. McCallum, in consequence of his said election." This condition, I understand, is complained of as not being for the faithful performance of his duties as County Clerk, &c. As is the usual phraseology, I can hardly believe this point was urged with any confidence. If it were necessary to recite the giving of a bond at all, there can be no mistaking what is there set forth for any other effort to aver that fact. It would seem that none, but the wilfully blind, could fail to discover, that "the duties required by law in consequence of his said election" immediately following the averment of his election as county clerk, means the duties of county clerk. If it is susceptible of any other interpretation, it may be said to be ambiguous. That is not a cause for demurrer. The court may, in such cases, be asked to order the pleadings to be made more certain.—*Olcott* v. *Carroll*, 39 *N. Y.* 436.

The judgment of the court below overruling the demurrer, must be sustained.

Judgment affirmed.

MASON, Ch. J. dissented to that part of the above opin ion in regard to the bond of McCallum.