## IN RE THE FOURTH JUDICIAL DISTRICT.

QUO WARRANTO—CONSTITUTIONAL LAW—SUBJECT AND TITLE OF STATUTES—ACT OF FEBRUARY 9, 1893, CREATING FOURTH JUDICIAL DISTRICT—CONSTRUCTION—APPOINTMENT OF JUDGE—VACANCY.

1. The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard or annul a legislative enactment upon the sole ground that it embraces more than one subject, or that the subject is not sufficiently expressed in its title.

2. The constitutional provision that "no bills except general appropriation bills and bills for the codification and general revision of the laws, shall be passed, containing more than one subject, which shall be clearly expressed in its title" requires a liberal and reasonable construction. The Act of February 9, 1893, defining the judicial districts and prescribing the time for holding the terms of the district court in the several counties of each district, which act created a new district—the fourth—and provided for the appointment of a judge thereof, contains but one general comprehensive subject, which is clearly expressed in its title.

3. The unit of the subject matter of the act is the defining of the four judicial districts, which might reasonably include the name, number, territorial extent and operation of the courts of such judicial districts, as they are subordinate, incident and germane to the main and general subject of the

act. The reorganization of the judicial districts, creating a new district, providing for the appointment of a judge therein, regulating the terms of court in the several counties, are all subjects that may be grouped under one general subject of legislation in one bill with a comprehensive title.

4. An act creating the office of judge of a new judicial district, such office became ipso facto vacant in its creation, and such act requiring the governor to appoint a judge of such new district until the next general election for judges of the district courts, is not for that reason obnoxious to the constitution.

5. Whether or not the legislature in any event exceeded its powers in authorizing the governor to make an appointment of judge to hold beyond the next general election, assuming that the "next general election for judges of district court" will occur subsequent thereto, need not be determined, as in this application for quo warranto it is sufficient to decide that the incumbent of the office is legally in office at the time of the application and hearing.

[Petition filed April 3, 1893. Decided April 24, 1893.]

ORIGINAL APPLICATION by the county and prosecuting attorney for Johnson County by direction of the board of the county commissioners of said county praying that the court direct the Attorney General to cause the institution of proceedings in the nature of quo warranto for the purpose of inquiring into and determining by what right or authority William S. Metz assumes to exercise the powers and functions of a judge of the district court within the County of Johnson and elsewhere in the State of Wyoming. The second legislature of the State had passed an act entitled "An act to define the judicial districts of the State, and prescribing the time for holding the terms of the district court in the several counties in each judicial district," which act was approved February 9, 1893. By that act the counties of Johnson, Sheridan, Crook and Weston (and Big Horn when organized) were to compose the Fourth District, which was a new and additional district; said counties theretofore belonging to one of the three districts into which the State was formerly divided. The new

act provided that the judge of the Fourth District should be appointed by the Governor, and that he should hold his office until the next succeeding general election for district judges, and until his successor should be elected and qualified. The Governor appointed Hon. William S. Metz as such judge, and he qualified and entered upon the discharge of the duties of that office. The act was assailed as unconstitutional, and its validity being questioned, the commissioners of Johnson County in a resolution reciting that such question had been raised, and that many important civil and criminal cases were pending in the court to be held in that county, instructed the county attorney to bring these proceedings. The reasons for doubting the constitutionality of the act are stated in the opinion. The act was declared constitutional, and the application was refused.

*Alvin Bennett,* county attorney, and *M. C. Brown* and *Charles H. Burritt,* for the application.

Counsel for the application argued and contended that the act creating the fourth judicial district was unconstitutional for the reason that the title did not mention the creation of a new district; that the title of an act defines its scope; it cannot contain any valid provision beyond the range of the subject stated in its title; and cited the following: (Sutherland Stat. Const., Sec. 102; State v. Silver, 9 Nev., 227; County v. Hunton, 49 Ala., 507; Breiswick v. Major, 51 Ga., 639; Davis v. State, 7 Md., 115; 16 Neb., 238; Robinson v. Skipworth, 23 Ind., 311; Sutherland Stat. Const., Secs. 103, 98, 99, 97 and 95; In re Sackett, 74 N. Y., 95; People v. Deuehy, 20 Mich., 349; Cooley's Const. Lim. (1st Ed.), 141 to 151, and authorities cited on pp. 147 and 148.)

*Lacey & Van Devanter* and *A. C. Campbell,* as amici curiæ, contra.

The question involved in this proceeding is whether the judicial district act, passed at the late session of the legislature, entitled "An act to define the judicial districts of the State, and prescribing the time for holding the terms of the district

court in the several counties of each judicial district" violates Sec. 24 of Art. 3, of the State constitution, providing: "No bill * * * shall be passed containing more than one subject, which shall be clearly expressed in its title." We think that the effect of the oral arguments has been to reduce the question to whether the subject of the act is "clearly expressed in its title," and that it is, in effect, conceded that the act is not one "containing more than one subject." As showing the rule by which the sufficiency of the title of such an act is to be determined, we cite the following authorities: Cooley's Con. Lim., 6th Ed., 169-180; Sutherland Stat. Con., Secs. 76-100; People v. Mahanney, 13 Mich., 481; Inkster v. Carver, 16 Mich., 484; Mauch Chunk v. McGee, 81 Pa. St., 433; Howland, etc., v. Brown, 13 Bush. (Ky.), 681; People v. Ins. Co., 19 Mich., 392; Ct. Ins. Co. v. Treasurer, 31 Mich., 6; People v. Wands, 23 Mich., 385; Kurtz v. People, 33 Mich., 279; People v. Bradley, 36 Mich., 447; Continental Co. v. Phelps, 47 Mich., 299; Golden v. Canal Co., 8 Colo., 144; Clare v. People, 9 Colo., 122; Dallas v. Redman, 10 Colo., 297; Ex parte Liddell, 93 Cal., 633; Phillips v. Bridge Co., 2 Met. (Ky.), 219; Johnson v. Higgins, 3 Met. (Ky.), 566; Poffenger v. Smith, 27 Neb., 788; St. Louis v. Teifel, 42 Mo., 578; State v. Matthews, 44 Mo., 523; State v. Bank, 45 Mo., 528; State v. Miller, 45 Mo., 495; State v. Ransom, 73 Mo., 78; Ewing v. Hoblitzelle, 85 Mo., 64; Mayor v. State, 30 Md., 112; State v. Union, 33 N. J. L., 350; Bellville, etc., v. Gregory, 15 Ill., 20; Firemen's, etc., v. Lounsbury, 21 Ill., 511; Supervisors v. People, 25 Ill., 163; O'Leary v. Cook Co., 28 Ill., 534; City of Verden v. Allen, 107 Ill., 505; Humboldt v. Churchill, 6 Nev., 30; State v. County Judge, 2 Ia., 280; Davis v. Woolnough, 9 Ia., 104; San Antonio v. Mehaffy, 96 U. S., 312; Montclair v. Ramsdell, 107 U. S., 147; City of Jonesboro v. Cairo, etc., 110 U. S., 192; Ottoe v. Baldwin, 111 U. S., 1; Mahomet v. Quackenbush, 117 U. S., 508; Haggard v. Hawkins, 14 Ind., 299; Grandin v. State, 16 Ind., 197; Hingle v. State, 24 Ind., 28; Bright v. McCullough, 27 Ind., 223; State v. Pitman, 46 Ind., 355; Commonwealth v. Green, 58 Pa. St., 226; Harding v. People, 10 Colo., 387; Conner v.

Mayor, 5 N. Y., 285;  Brewster v. Syracuse, 19 N. Y., 116; Devlin v. Mayor, 63 N. Y., 8;  Board v. Spitler, 13 Ind., 235.

The word "define" is frequently used in legislation to mean create, enlarge or extend.  People v. Bradley, 36 Mich., 447.

Creation of a new judicial district necessarily created office of judge thereof.  Stocking v. State, 7 Ind., 326;  Rice v. State, 7 Ind., 332;  People v. Burch, 84 Mich., 408;  see also State v. Pitman, 46 Ind., 355;  Commonwealth v. Green, 58 Pa. St., 226.

The real subject of the act was the dividing of the State into judicial districts;  the title of the act was sufficient to cover this subject, and the title did not indicate the number of districts into which the State was divided, and therefore was not deceptive, but necessarily referred the reader to the body of the act.  As a part of the determining of the judicial districts, the defining or fixing of them, the number thereof could be defined and determined to the same extent that their boundaries could be defined and determined, so long as the number was not increased beyond the constitutional limit. As an incident of, and as necessarily connected with, the division of the State into judicial districts, it was proper to insert in the act anything that would carry into effect the division so made, such as providing for the terms of court therein, and for judges to hold such courts.  If the title in question was sufficient to cover a division of the State into four districts, then the whole question has been solved.  Meacham on Public Officers, Sec. 132;  Throop on Public Officers, Sec. 431;  State v. Askhew, 48 Ark., 82, and authorities above cited.

Under our constitution and statutes district judges are to be elected at general elections, and if necessary, it was proper for the legislature to provide for a provisional appointment. Judge Metz's term of office under his present appointment is not in question. If it is the duty of the Governor to issue a call for the election of a district judge in the Fourth District, at the next general election, the presumption is that he will perform that duty.  It is not to be presumed that Judge Metz will attempt to serve beyond his lawful term.

It was suggested in the argument that the creation of an ad-

ditional district judge must necessarily be made, if made at all, under the authority contained in Sec. 11 of Art. 4, of the constitution, viz.: "The legislature may provide for such other State officers as are deemed necessary." The interpretation of the words "State officers here used, must be largely determined by the connection in which they are used. That section provides for "a Secretary of State, Auditor, Treasurer and Superintendent of Public Instruction," all of whom are elected by the entire people of the State, and all of whom serve the entire people of the State. Their office and other duties are in no sense local or confined to any subdivision of the State or portion thereof less than the whole. After thus creating these officers, the provision that the legislature may provide for other State officers, necessarily means that the other officers shall be of the same general character as those theretofore specifically mentioned in the section, and does not refer to a district judge, whose residence, duties and office are all confined to a subdivision of the State; thus making him a district officer as contradistinguished from the term State officer. Our constitution Sec. 19 of Art. 5, Secs. 20 and 21 of Art. 6, and Secs. 9, 11 and 20 of the schedule, show clearly that the constitutional convention treated district judges as district officers, and not as State officers.

If the title of the act had been "to re-define the judicial districts of the State," it would have been sufficient. State v. Atherton, 19 Nev., 332-344.

The omission of the prefix "re" cannot have rendered the title misleading. In view of existing conditions it meant the same thing whether the prefix was used or not. The subject of judicial districts was already defined by legislation, and to define it again was necessarily to "re-define" it—to cover the subject of judicial districts by new legislation.

GROESBECK, CHIEF JUSTICE.

This is a motion or an application on behalf of the Board of the County Commissioners of the County of Johnson to direct the Attorney General to cause proceedings in the nature of quo warranto to be instituted in this court for the purpose

of inquiring and determining by what right or authority one William S. Metz assumes to exercise the powers and functions of a judge of the district court within the County of Johnson or elsewhere in this State.

It appears from the application, duly verified, that said William S. Metz was appointed by the Governor to the office of judge of the Fourth Judicial District of this State, and that such appointee has duly qualified and is now assuming to perform the functions of such office. This application is claimed to be authorized by a section of the Revised Statutes which provides that the Attorney General or a prosecuting attorney when directed by the Governor, the supreme court or the legislature shall commence the action in the nature of quo warranto against a person who usurps, intrudes into, or unlawfully holds or exercises a public office, civil or military, within this State. Secs. 3092 and 3094, Rev. Stat. Wyo. And it is sought to have this court direct that such action be commenced against the said William S. Metz. Some objections were made in the argument as to the propriety and legality of this application and as to the jurisdiction of this court to allow the writ to run to one claiming to be a district judge, as it was contended that such an officer is not a "State" but a "district" officer within the meaning of various constitutional provisions, our original jurisdiction in quo warranto being limited to State officers (Const. Wyo., Art. V, Sec. 3), but as the matter was finally submitted on the question of the validity of the law under which said William S. Metz was appointed and his office created, we shall pass upon these questions without determining the other points raised, upon which we express no opinion.

1. The statute challenged in this proceeding is entitled "An act to define the judicial districts of the State, and prescribing the time for holding the terms of the district court in the several counties of each judicial district." It was approved by the Governor February 9, 1893, at which time it took immediate effect. It is assailed as a violation in its body and title of the constitutional inhibition that "No bill, except general appropriation bills and bills for the codifica-

tion and general revision of the laws, shall be passed, containing more than one subject, which shall be clearly expressed in the title." Const., Art. III., Sec. 24. The grounds of the attack are that the act contains more than one subject, that it is broader than the title, and that the subject of the act is not clearly expressed in its title. The act divides the State into four judicial districts, thus in effect creating a new one, the Fourth Judicial District. It assigns the different counties of the State to the different districts; provides for terms of court to be held in the several counties of each judicial district; for the appointment by the Governor of a judge of the Fourth Judicial District to "hold his office until the next succeeding election of judges of the district courts in the State, and until his successor is elected and qualified;" for the qualifications provided for district judges in the constitution to be possessed by such appointee; for his taking the oath of office within the time prescribed by the act; for the final determination of matters pending in the organized counties of the new district by the district courts of such counties; and repeals all but Section 2 of the last preceding act defining the judicial districts of the State and providing for the holding of terms of court therein. (Chap. 52; Sess. Laws 1890-91.)

It is the duty of the courts when called upon to declare an act of the legislature unconstitutional, which has been passed with all the forms and ceremonies requisite to give it force, to approach the question with great caution and to consider it with the utmost care and deliberation. Before an act of the legislature is pronounced void, it should appear that there has been a clear and palpable evasion of the constitution. The judiciary ought to accord to the legislature as much purity of purpose as it claims for itself; as honest a desire to obey the constitution; and also a high capacity to judge of its meaning. Ewing v. Hoblitzelle, 85 Missouri, 64-70, citing a number of Missouri cases. The objections should be grave and the conflict between the act and the constitution palpable, before the judiciary should disregard or annul a legislative enactment upon the sole ground that it embraces more than one subject, or when it contains but one subject, on the ground that it

is not sufficiently expressed in its title.    Sutherland St. Const., Sec. 83, citing Montclair v. Ramsdell, 107 U. S., 155.    The courts in those States having the same or substantially the same provision as that invoked in this action to defeat the act, hold that such provision must be reasonably and liberally construed.    Golden v. Canal Company v. Bright, 8 Colo., 144; People ex rel. Goddard, Id., 432; Clare v. People, 9 Id., 126; Dallas v. Redman, 10 Id., 297; State ex rel. Ranson, 73 Missouri, 78-86; State v. Barrett, 27 Kan., 216; State v. Miller, 45 Missouri, 497.

In construing this constitutional provision, the supreme court of Colorado in the case of In re Breene, 14 Colorado, 401, say: "First, that it is mandatory.    Such is the view expressly declared by this court, and, with but two or three exceptions, adopted elsewhere.    Railroad Company v. People, 5 Colo., 40; Wall v. Garrison, 11 Colo., 515.    Second, that it should be liberally and reasonably interpreted, so as to avert the evils against which it is aimed, and at the same time avoid unnecessarily obstructing legislation.    Clare v. People, 9 Colo., 122; Dallas v. Redman, 10 Colo., 297.    Third, that it embraces two mandates, viz.:    one forbidding the union in the same legislative bill of separate and distinct subjects, and the other commanding that the subject treated of in the body of the bill shall be clearly expressed in its title.    Each of these mandates is designed to obviate flagrant evils connected with the adoption of laws.    The former prevents joining in the same act disconnected and incongruous matters.    The purpose of the latter is thus tersely and forcibly stated in Dorsey's Appeal, 72 Pa. St., 192: 'Another purpose was to give information to the members, or others interested, by the title of the bill, of the contemplated legislation; and thereby to prevent the passage of unknown and alien subjects, which might be coiled up in the folds of the bill.'    The provision undoubtedly deals with legislative procedure; but obedience thereto directly results in advising the people of the contents of bills that have become laws.    It is quite as important to the official or the private citizen that he have the highest facilities for knowing the existing law, as that he have oppor-

tunity to offer criticism or suggestion upon pending legislation. He should not be left to discover, 'coiled up in the folds' of an act apparently in no way concerning him, a provision affecting his most important interests." And again: "Nor is the constitution unreasonable in this respect, or difficult to comply with. When intelligently and carefully observed, it embarrasses proper legislation but little. The general assembly may, within reason, make the title of a bill as comprehensive as it chooses, and thus cover legislation relating to many minor but associated matters. For example, an act entitled 'An act in relation to municipal corporations,' may provide for the organization, government, powers, duties, officers and revenue of such corporations, as well as for all other matters pertaining thereto. 'The generality of a title,' says Judge Cooley, 'is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection.' Const. Lim. (5th Ed.), 174. It is not essential that the title shall specify particularly each and every subdivision of the general subject. Such a requirement would lead to surprising and disastrous results. Many titles would not only be absurdly prolix, but the laws themselves would be endangered by virtue of the inhibition against duplicity of subjects. Edwards v. Railroad Co., 13 Colo., 59; People v. Goddard, 8 Colo., 432. Efforts to cover specifically in the title all subordinate matters treated of in the act have already jeopardized legislation in this State, and only by the most liberal interpretation has the court been able to save the statutes. Canal Co. v. Bright, 8 Colo., 144; Clare v. People, supra." It was said in this case, In re Breene, supra, that the legislature had the right to contract the scope of the title to the narrowest limits, and if it does so, care must be taken not to transcend in the body of the bill the limit thus voluntarily fixed. It was accordingly held that where a title to an act provided "for the assessment and collection of revenue" and a provision of the act made it a crime for the State Treasurer to loan out or in any manner use for private purposes the public funds in his hands, that the act was broader than the title

in respect to such provision.  It is further said in the opinion that "had the legislature been content with the title An act in relation to revenue, the question before us would be relieved of the present embarrassment."  So it seems in the case quoted from, if the legislature had chosen a title broader and more general than the one it did invent for the act, there would have been little or no difficulty in sustaining the provision held to be obnoxious.  Applying these principles laid down with so much care by the court of last resort of a sister State, where the same constitutional provision exists, to the matter before us, it would seem that under a liberal and reasonable construction of the inhibition of our constitution that there is but one general or comprehensive subject contained in this act, and that that subject is clearly expressed in its title.  The unit, the subject matter of the legislation comprehended in the act is the defining of the four judicial districts, and this defining might reasonably include the name, number and territorial extent and operation of the courts of such judicial districts, as they are subordinate, incident and germane to the main and general subject of the act.  It would be absurd to say that in dealing with the reorganization of the judicial districts of the State, the legislature would be compelled to enact one statute creating a new district, another providing for the appointment or election of a judge therein, and another providing for the terms of court in the several counties in each district.  All these subjects may well be grouped under one general topic or subject of legislation in one bill, with a comprehensive title.  The different entireties of such legislation are not inharmonious or incongruous.  No one would be misled by such a bill, while in the course of legislative gestation, or by such an act on the statute books.  If one should desire to know how many judicial districts there were in this State, what territory each embraced, or of how many counties each was composed, or how many terms of the district court were to be had annually in each county and at what times, he would naturally turn to this act, even if he were not aided by an index to the subordinate subjects of the act.  Such an inquirer would not find injected into or

"coiled up in the folds" of this act any extraneous subject other than the one indicated by its title, the defining of the judicial districts of the State. The purpose of the constitutional provision that the bill should contain but one subject has been defined time and again by the courts, and a consensus of the multitude of opinions construing this inhibition will disclose that it was designed to prevent incongruous and diverse legislation in one bill, to make fruitless the practice known as "log rolling" and to banish hodge-podge legislation from the statute books; to render futile the grouping together in an omnibus bill a number of distinct legislative measures, each of which could not pass on its own merits, but which with the aid of its own adherents, and those advocating the other measures, would become a law. There was no such a restriction upon the legislative assembly of the territory and many acts became laws which under the familiar and general description in the title "for other purposes" contained many and diverse subjects of legislation.

There is no incongruity in the subjects of this act which are but satellites of the comprehensive subject of defining the judicial districts of the State. The legislature had the right to increase the number of such districts to four and the number of judges to four, and the only limitation imposed by the fundamental law in the increase of judicial districts, is that the number of districts and district judges shall not exceed four until the taxable valuation of property in the State shall exceed one hundred million of dollars. Const. Wyo., Art. V, Sec. 22. The provision for the Fourth District and a fourth judge are all matters immediately and intimately connected with and incident to the division of the State into judicial districts. Before the passage of this act, there were three judicial districts, and under the territorial regime there were but three. The constitution provides that "until otherwise provided by law" there shall be three judicial districts, which were temporarily defined in that instrument. Art. V, Sec. 19. They were defined anew thereafter, but their number was not increased by Ch. 52 of the Session Laws of 1890-91, those

of the First State Legislature. They were defined anew in this act and their number increased to four. The title of the act of the Second Legislature defining the judicial districts of the State is precisely the same as that used in the act passed by the First State Legislature. The subject matter of these acts are identical with the exception of the creation of a new judicial district, the office of judge thereof, and the provision for additional terms of district court in a number of counties.

It was insisted in the argument that the act should have been directed solely to the organization of the Fourth Judicial District, but although this would have been a proper and distinct subject of legislation, such action on the part of the legislature would have rendered necessary other enactments to fix the additional terms of court provided for in the act.

The title is one that was employed in former legislation on the same subject by both territorial and State legislatures. For this reason, it is insisted that no notice was given by it to the legislature and the people by reading it, of the formation of a new district. We think this is not tenable. The defining anew of the districts would put any one interested either in the bill during its course in each house and before the Governor on the inquiry as to whether the number of the districts were defined anew, as well as the defining anew of the former districts. In reading the title of the act, we have already indicated that it was a sufficient guide to one desiring to know the number and territorial extent of each district. It was said in argument that the word "define" has a technical and common meaning and is used to make clear and definite what was before uncertain or obscure and relates to something that had a prior existence; hence in defining the judicial districts of the State, it must be assumed that the legislature would do no more than to re-define or rearrange existing districts and not create a new one. This word so frequently used in legislation and generally in the titles to acts has been construed by the courts to have a broader meaning and is not used exclusively in the sense of making clear and certain what was before unintelligible, ambiguous or uncertain. It is

frequently used in the title to acts in the creation, enlarging and extending the powers and duties of boards and officers, in defining certain offenses and providing punishment for the same, and thus enlarging and extending the scope of the criminal law. "If the word used by the legislature can in any of its various uses or meanings be considered appropriate or applicable, then we can not say that they did not have the right to use it in that sense, even though we might be of opinion that a better and more appropriate one might have been chosen, and one that people generally would have better undertsood." People v. Bradley, 36 Mich., 447; Walters v. Richardson (Ky.), 20 S. W., 279. In Kansas, where the constitutional provision is nearly the same as ours, an act was passed entitled "An act defining the boundaries of counties." Under its provisions, the boundaries of 79 counties were defined and established. Four years later, another act was passed entitled "An act amendatory and supplemental to an act entitled 'An act defining the boundaries of counties.'" Under this amendatory act, the boundaries of four counties were defined and established. Two of these counties were created by the act and the other two simply had their boundaries changed. It was held that a certain section of the act providing for an arbitrary rule of taxation for certain territory detached from one county and attached to one of the new counties created by the act was foreign to the title, and was not expressed in it, but the court did not question the validity of the act or of its title in other respects. It says: "Neither the act of 1868 (the original act) nor the act of 1872 (the amendatory act) mentions any subject except that of 'defining the boundaries of counties.' This title is probably broad enough to authorize the changing of county lines, the establishing of county lines, the creation of the boundary lines of new counties, substantially the creation of new counties, etc." Commissioners of Sedgwick Co. v. Bailey, 13 Kansas, 600-609. And more recently in that State, an act with this title: "An act defining the boundaries of Edwards and other counties and amendatory of Chapter 24 of the general statutes of Kansas, etc., defining the boundaries of counties,"

destroyed the existence of Kiowa County, although it was not mentioned in the title. It was held that "the County of Kiowa in the title was not essential to the validity of the act, and the title is sufficiently broad to include and is fairly expressive of what is found in the act." State ex rel. v. Commissioners of Kiowa County, 41 Kansas, 630-634. As the word "define" may be held to include something not already legislated upon or which was not included in former legislation, but in the sense of enlarging or extending, the title of the disputed act is broad enough to include all the provisions of the act. If the title to the act amendatory of one defining the boundaries of counties can be held broad enough to include in the body of the act "substantially the creation of new counties," and another act defining the boundaries of a particular county named in the title and other counties not named therein, to constitutionally include the abrogation of a county not named in the title, as held in the Kansas cases, supra, there ought to be no difficulty in sustaining this act, as its title "to define the judicial districts of the State," is broad, comprehensive and general enough to include the formation of a new judicial district. The title states that the act purposes to define the judicial districts of the State, and it does define them in number and territorial extent, and the creation of a new district which is defined with the others as to number and area is but a component part of the general subject of the act, is germane to it, related to it and intimately connected with it. We must hold that the act is not obnoxious for the reason that it contains more than one subject, or because the subject is not clearly expressed in its title. The following cases cited in the brief of counsel have great weight on the matters herein discussed: City of St. Louis v. Tiefel, 42 Mo., 590; Harrington v. Winds, 23 Mich., 389; Ex parte Liddell, 93 Cal., 638; Mayor v. State, 30 Md., 119; Kurtz v. People, 33 Mich., 282; State v. Town of Union, 33 N. J. Law, 354; People v. McCallum, 1 Neb., 194; Falconer v. Robinson, 46 Ala., 346; People v. Mahaney, 13 Mich., 481; Mauch Chunk v. McGee, 81 Pa. St., 433; State v. Atherton, 19 Nev., 344; Phillips v. Bridge Co., 2 Met. (Ky.), 219; John-

son v. Higgins, 3 Id., 566; Bright v. McCullough, 27 Ind., 226; Haggard v. Hawkins, 14 Id., 299; Howland Coal & Iron Works v. Brown, 13 Bush, 681; Commonwealth v. Green, 58 Pa. St., 226.

2.   It is further claimed that the act is unconstitutional because it provides for the appointment and not the election of a judge of the Fourth Judicial District.

While there is an express provision for the filling of a vacancy in the office of justice of the supreme court in the judiciary article of the constitution, by appointment of the Governor, the appointee to hold the office until the qualification of a successor to fill the unexpired term, who is elected at the next succeeding general election; there is no such special provision for filling a vacancy in the office of judge of the district court, but it is clear that a general provision appearing in Section 7 of Article 3, controls.   It reads: "When any office from any cause becomes vacant and no mode is provided by the constitution or law for filling such vacancy, the Governor shall have power to fill the same by appointment." The statute before us provides for filling the vacancy created by it, in the formation of the new judicial district, by the appointment of the Governor, and that such appointee shall hold the office until the qualification of his successor to be elected at the next general election for judges of district courts.   This provision in so far as it relates to filling the newly created office by appointment seems to us to be valid and not hostile to the constitution.   While the judges of district courts created in the constitution are to be elected and were elected at the first State election in 1890 for full terms, there is nothing appearing expressly or by implication in the constitution providing that the vacancy in such office may not be provisionally filled by appointment, without resorting to a special election to fill it.   Indeed, the constitution provides clearly for the temporary or provisional appointment to fill the vacancy in Section 3 of Article 7, supra, and it further provides that no district judge can be removed from his office by the increase or change in the boundaries of judicial districts during the term for which he may have been elected

or "appointed." Art. V, Sec. 22. This provision indicates of itself that the framers of the constitution understood that district judges might be provisionally appointed.

3. Although it was claimed with much vigor in the argument on behalf of the relator, that there could be no vacancy in the new office until once filled by an incumbent thereof, we think the converse of this provision is too clear for discussion. An old office is vacated by death, resignation or removal. An office newly created becomes ipso facto vacant in its creation. State v. Askew, 48 Ark., 89, citing a large number of cases. Throop on Public Officers, Sec. 132; Meacham on Public Officers, Sec. 431.

Upon the argument counsel for relator contended that the legislature could not in any event authorize the appointment by the Governor of a judge of the Fourth Judicial District to hold until the next election for district judges, to be held in the year 1896, but only until the qualification of a successor to be elected at the next general election which will occur in November, 1894. It is unnecessary for us to decide this point. It is sufficient in this inquiry to decide that the incumbent of the office is legally in office at the time this application was made and at the time of this hearing.

Mention was made in the argument of the existence of Section 2 of Chapter 52 of the Session Laws of 1890-91, which was not repealed by the act under consideration, and that if a valid law it would bring within its operations the judges of all the districts except the fourth. It provides that the several judges of the First, Second and Third Judicial Districts shall, with their successors, act in their respective districts, hold the terms of the district courts therein, and for each other when the regular judge is disqualified or unable to act. No such provision appears in the new act. The constitution provides (Art. V, Sec. 11) that "the judges of the district courts 'may' hold courts for each other and 'shall' do so when required by law." It is unnecessary to pass upon this question in this proceeding, whether the unrepealed Section 2 of the old act applies to the judge of the Fourth Judicial District and compels him to hold courts for the other judges,

or any of them to hold court for him, or whether this section is void because not general or uniform in its operation, does not affect the validity of the new act under consideration. As to the necessity for the creation of the Fourth Judicial District, that is purely a legislative question, and this court has no right and no disposition to invade the domain of the legislative department.

*The motion is denied.*

CONAWAY and CLARK, JJ., concur.