GOLDEN CANAL CO. v. BRIGHT.

1. The constitutional inhibition against having more than one subject in a bill must be reasonably construed; it is enough that the bill treats of but one general subject and that subject is expressed in the title.

2. Under the statutes a ditch owner may make reasonable rules to be observed by both himself and the consumer in the sale and distribution of water from his ditch. But a prior purchaser who has complied with the provisions of the law cannot be required, as a condition precedent to the exercise of his right to purchase water, to acknowledge the equity of all the rules adopted by the ditch owner.

3. Though the prior purchaser has not made application within the time prescribed by rule, yet if he do so afterwards, and while the ditch owner is free from conflicting obligations, and is able to grant his request, the statutory right to purchase is not forfeited.

4. A prior purchaser is entitled to continue to purchase, although he may be able to obtain water from some other source.

5. Where a law declares that A. shall have a right to purchase water of B., a clear legal obligation to sell is thereby imposed upon B.

6. Under the statute there is no appeal from the decision of the county commissioners fixing the rate to be charged for water by ditch owners.

7. The petition and affidavit for *mandamus* need not necessarily be separate papers; since the petition must contain all the matters which would be set out in the affidavit, it is sufficient if the petition be sworn to.

## Error to District Court of Arapahoe County.

BRIGHT, the defendant in error, filed his complaint in the district court of Arapahoe county, alleging that the plaintiff in error was an incorporation, for the purpose of constructing, owning and maintaining certain ditches for the purpose, among other things, of supplying water for irrigation; that he owned and had owned for eight years a tract of land on the line of the ditch of plaintiff in error, the Golden Canal Company; that the land had been occupied and used as a farm for that time; that the ditch was constructed for the purpose of supplying farmers along the line thereof with water, including defendant in

error; that he had used the water from time to time during eight years, having purchased the same from the company and its grantors; that during the irrigating season he had for five years or more purchased and used forty inches, delivered through a certain box at a price not exceeding $2 per inch; that he had no other practicable source of supply, and that it was impossible to grow and produce crops without said water; that during the five years he had not ceased to purchase and use the water with intent to procure water from some other source; that prior to the year 1884, the county commissioners had not fixed a price to be charged for the water; that in January, 1884, other parties interested in procuring water applied to the county commissioners to fix the price of water to be thereafter used from said ditch; that they had been obliged to pay from $1.50 to $2 per inch, whereas $1.25 per inch was a full and fair price; that upon a hearing the commissioners fixed the price at $1.50 per inch; that afterwards, in May, 1884, he applied to the company for water and tendered the price fixed by the commissioners; that the company refused to accept the payment and refused to furnish water to him; that his crops were in danger of being lost, etc., and praying for a writ of *mandamus* to compel the acceptance of the price, to furnish the water to be measured, etc.

The company, plaintiff in error, subsequently answered, denying that Bright had no other source of supply, and averring other sources of supply; denied the tender; that he was deprived of water, and that non-delivery of water by the company would injure him; admitting application for seventy inches on May 31, 1884, and the tender of $1.50 per inch, but that he omitted to apply before that date for water for the irrigating season of 1884, and averred that, prior to that date, other parties entitled to water had applied for all the water not sold; that application should have been made before that date, and because of the delay the company was not bound to keep or retain

water so late as the 31st of May; that the irrigating season began April 1st, and by rule of the company it was required that application be made before the commencement of the season, of which Bright had notice.

For a second defense, that the company, for the better management of its affairs, had adopted certain rules and regulations; that Bright had knowledge of them at the time of his tender; that he refused to assent to or be bound by the rules, wherefore the company was under no obligation to furnish, etc.

For a third defense, the company admitted the action of the commissioners fixing the rate; that on March 18, 1884, the commissioners entered the order fixing the price at $1.50 per inch, and alleged that on the last mentioned date the company had given notice of appeal, and asked that the amount of bond on appeal be fixed by the commissioners; that the commissioners refused to fix the amount of the bond; that on April 12, 1884, formal notice of appeal was served; that bond on appeal was tendered to the clerk of the board of commissioners, with sureties; that the clerk refused to receive the bond; that the clerk of the district court to which appeal was sought also refused to approve the bond, and that the company did all things in its power to perfect the appeal. That the proceedings before the commissioners were void for want of jurisdiction to determine and fix the price of water, etc.

To this answer Bright interposed a demurrer. The demurrer was sustained. Bright took judgment and a peremptory writ of *mandamus* was ordered. To reverse which this writ of error was sued out.

Mr. WM. B. MILLS, for plaintiff in error.

Messrs. BENEDICT and PHELPS, for defendant in error.

HELM, J.   Two classes of questions are presented by this record for consideration: First, those involving the rights of the parties under the constitution and statutes

governing the subject in controversy; and second, those relating to procedure. So far as practicable, these classes of subjects will be separately considered, the former first receiving attention.

*First.* Our constitution, article 16, section 8, reads as follows: "The general assembly shall provide by law that the board of county commissioners, in their respective counties, shall have power, when application is made to them by either party interested, to establish reasonable maximum rates to be charged for the use of water, whether furnished by individuals or corporations." In obedience to this constitutional command, the legislature of 1879 designated the course to be pursued in procuring the requisite order from the respective boards of county commissioners. General Statutes, secs. 1738 and 1739. No fault is claimed from a constitutional point of view with the *substance* of this legislation; none could be found with its purpose. The specific grounds of objection are, that the title of the act contains more than one subject, and that the matter of fixing maximum rates is not clearly referred to therein. This title is as follows: "An act to regulate the use of water for irrigation, and providing for settling the priority of right thereto, and for payment of the expenses thereof, and for payment of all costs and expenses incident to said regulation and use."

It might have been wiser to have abbreviated the foregoing title. In our judgment the same would have been sufficient had it read: "An act to regulate the use of water for irrigation." This is the controlling purpose of the law; the rest of the title refers to nothing which is not germane to the subject thus expressed. Incidental to a proper regulation of the use of water diverted from natural streams in this state is a determination of the priorities of right in connection therewith. This court has held that in Colorado, "in the absence of express statutes to the contrary, the first appropriator of water

from a natural stream for a beneficial purpose has, with the qualifications contained in the constitution, a prior right thereto to the extent of such appropriation." *Coffin v. Left Hand Ditch Co.* 6 Colo. 443; *Thomas v. Guiraud,* id. 530. And it requires no argument to demonstrate that a general law intended to fully regulate the use of such water would almost of necessity touch upon the subject of priority of right thereto; while of course the payment of expenses and costs in determining such priority of right, and in regulating such use, is a subject that would naturally be considered. So we do not think the title obnoxious to the objection that more than one subject is expressed therein. However involved and obscure the language used may at first appear, it is plain that the object of the law as declared in its title is the regulation of the use of water for irrigation.

But it is only by the outlay of large sums of money, in constructing and maintaining canals or ditches, that the business of agriculture in portions of the state can be extensively and successfully carried on. The average farmer is often too poor to make the expenditure necessary in owning and operating a *main* ditch of his own; besides, it is almost always a matter of economy to convey water long distances through a single large main, and then distribute it to the consumers by means of small laterals. Consequently, individuals and corporations like respondent engage in the business of building and operating these mains and furnishing water to farmers along the lines thereof. If these persons or corporations were entirely uncontrolled in the matter of prices, it requires no prophetic vision to see that injustice and trouble would follow. If allowed to speculate upon that which is properly a part of the public domain and protected in the possession thereof, it is exceedingly appropriate that they should be subjected to reasonable regulations in connection therewith. Hence, the wisdom and justice of section 8 of the constitution above quoted.

In the law before us the legislature attempts to regulate the use of water thus furnished and sold by respondent and others who engage in such enterprises.   Prominent among the matters involved in this regulation is the price to be charged; the phrase, *regulating the use*, is not confined to the forbidding of injustice in the distribution, the prevention of waste or the apportionment in times of scarcity; it is broad enough to include the frustration of unfair exactions, and the fixing of reasonable rates. To deny this would be to give the expression a narrow and restricted meaning, instead of construing it liberally, with a view to carrying out the legislative intent.   The title is, therefore, not misleading so far as this objection is concerned; no incongruity in this particular exists; no surprise or fraud there-through can be fairly presumed. The requirement that the subject "shall be clearly expressed in the title," is sufficiently complied with.   See Cooley's Const. Lim. *142 *et seq.* and cases cited.

This constitutional inhibition must receive a reasonable construction.   It is enough if the bill treats of but one *general subject*, and that subject is expressed in the title; to require that each subdivision of the subject, each and every of the "ends and means necessary or convenient for the accomplishment of the object," must be specifically mentioned in the title, would greatly impede and embarrass legitimate legislation.   Judge Cooley asserts that it would "actually render legislation impossible." Cooley, Const. Lim. *144.

*Second.* It is conceded by counsel, in argument, that the ditch owner may make reasonable rules, subject to statutory provisions, to be observed by both himself and the consumer, in the sale and distribution of water from his ditch.   But section 1740 of the General Statutes confers an affirmative right upon the prior purchaser, who has complied with the provisions thereof, to continue his purchase of water, and he cannot be required, as a condition precedent to the exercise of this right, to acknowl-

edge the equity of all the rules adopted by the ditch owner; to say that he could, would be, in a measure, to place him at the mercy of such proprietor, for he could thus be coerced into compliance with the most oppressive and unjust regulation. If the rule is fair and reasonable, and in harmony with law, his obedience thereto will probably be enforced regardless of prior approval; but the reasonableness thereof is a matter to be determined in some proper tribunal. This ground of defense was, therefore, untenable.

*Third.* It is not necessary for us at this time to pass upon the propriety and justice of respondent's rule, requiring application for water to be made by a prior purchaser, previous to the beginning of the irrigating season. Such a regulation, proper notice thereof being given, has much to commend it; it would probably result in mutual convenience and benefit. Conceding the propriety thereof, and also the justice of a condition therein, had one been inserted, forfeiting the right of a prior purchaser, in case of non-compliance therewith, *provided the water has in the meantime been disposed of to other parties,* we are still of opinion that, in this matter, the court below committed no error. It does not appear from this branch of the answer that any such disposition had been made when relator presented his application; for aught that is stated, respondent had, unincumbered by any promise or sale, a sufficient quantity to have supplied relator; and we think that, under the circumstances, a fair construction of the section last above mentioned, required compliance with the latter's request. That is to say, in our judgment, though the prior purchaser has not made his application within the time prescribed by rule, yet if he do so afterwards, and while the ditch owner is free from conflicting obligations and is able to grant his request, the statutory right is not forfeited. The declaration in respondent's answer that other parties had, previous to relator's application, petitioned for all the water left does not amount

to an averment that respondent had sold or agreed to sell the same, or was under any obligation so to do; nor does it even justify the conclusion as a matter of pleading, that such petition was still before respondent and subject to favorable action.

*Fourth.* It is not material whether the relator in this case had any other source from which to obtain the water desired. Section 1740, above mentioned, provides that: "Any person or persons acting jointly or severally, who shall have purchased and used water for irrigation for lands occupied by him, her or them, from any ditch or reservoir, and shall not have ceased to do so for the purpose or with the intent to procure water from some other source of supply, shall have a right to continue to purchase water to the same amount on paying or tendering the price fixed by the county commissioners as above provided; or if no price shall have been fixed by them, the price at which the owners of such ditch or reservoir may be then selling water, or did sell water during the then last preceding year." * * * By this statute the subject is governed; its provisions specify the conditions upon which the right conferred is to be exercised; but it makes no exception where the consumer mentioned can procure the water from some other source; and we must presume that the legislature intended to confer the privilege specified unlimited by any such qualification.

*Fifth.* It is contended that the matters presented do not make out a proper case for the extraordinary remedy by *mandamus.* In support of this proposition, two reasons are given, viz.: that there was no such *duty enjoined* by law in the premises upon respondent as must exist to justify the proceeding; and that relator had a plain, speedy and adequate remedy in the ordinary course of law. If either of these positions be correct, the proceeding cannot be sustained; for both of the conditions implied, to wit, the right of relator to have admission, at the hands of respondent, to the privilege mentioned, and

the inadequacy of the law to afford any other sufficient relief, must have co-existed to justify the court in issuing the peremptory writ.

By section 1740, above given, as we have seen, a specific right is conferred upon relator; by the same provision, in our judgment, a corresponding duty is imposed upon respondent. When the law declares that, upon doing certain things, relator shall have the right to purchase water of respondent, it would be an impotent construction to admit that a clear legal obligation binding the latter to sell is not also created. Relator is entitled, upon performance of the condition precedent, to admission to the use and enjoyment of a certain quantity of water from respondent's ditch; to say that the latter is not burdened with the duty of admitting the former to such use and enjoyment is to deny the right and nullify the statute. We are not called upon here to decide whether the statute imposes upon a ditch owner the duty of keeping sufficient water in his ditch, when possible, to supply prior purchasers; that question is not presented. What we declare is, that, having the water, he is required to admit the latter to its use and enjoyment, upon payment or tender of the proper price therefor; provided, of course, the right thereto has not been forfeited.

In aid of his position that relator has an adequate remedy at law, counsel suggests that he could sue for the damages resulting from the loss of his crop. It is true that, if such a loss occurred by reason of respondent's wrongful refusal to sell the water, relator might invoke the relief suggested.

In the first place, however, the relation of the parties should be remembered. Relator does not occupy the attitude merely of one in whose favor an ordinary right of action accrues by reason of the tortious conduct of another; nor merely of one who may recover damages for the violation of a contract. By statute, a peculiar right in favor of relator, and a special obligation on the

part of respondent, are created; it may be true, as counsel for the relator assert, that this is one of the trust relations referred to in section 333 of the code, the provision designating circumstances under which the writ may issue.

But in the second place the remedy mentioned would hardly in any event prove to be either speedy or *adequate*. Relator wishes to cultivate and enrich his land; to augment its value; to provide himself with employment; to secure the income from the sale of his crops; and to derive, directly and indirectly, numerous other benefits from the use of the water to which he is entitled under the law. The relief furnished by an ordinary action for damages would not comprehend indemnity for the loss of all these advantages. In the single matter of determining what sort of a crop would have been raised, and what sum will adequately compensate for the loss thereof, perplexing difficulties would arise; while the delays, incident to an action of this kind, would render the relief, such as it might ultimately prove to be under the circumstances, anything but speedy. In view of the relation of the parties, the statutory provisions, and all the surrounding circumstances, we are constrained to hold that *mandamus* was an appropriate remedy.

*Sixth.* The irrigation law itself makes no provision for an appeal from the decision of the board of county commissioners fixing the rates to be charged and paid for water. Counsel urges that sections 32 and 34 of the act, as it was adopted in 1879, provide for this relief. Examination discloses the fact that these sections were probably repealed by the act relating to priorities in the appropriation of water, adopted by the succeeding legislature. Sess. Laws 1881, p. 142 *et. seq.* This was the view taken by the compiler of the General Statutes, and consequently those sections were omitted from the compilation. Sections 1786 and 1789 of these statutes, being sections 24 and 27 of the said act of 1881, seem to have

been intended as a substitute for sections 32 and 34 aforesaid; they substantially cover the same field, and in so far as any conflict exists, of course the later provisions must prevail. If this view be correct counsel's argument falls to the ground. The appeal provided for in said section 1789 clearly and unequivocally relates to a review in the supreme court of the action in the district court in determining priorities of right. It could not possibly be considered as referring to the decision of the commissioners in fixing the prices of water under section 1740 aforesaid.

But, supposing we are mistaken in suggesting that the repeal mentioned has taken place, still we cannot concur with counsel in his conclusion as to the effect of section 34 of the act of 1879. This provision, in our judgment, relates to the matters appearing in sections 19 to 33 inclusive, immediately preceding. That portion of the law is devoted exclusively to the adjudication in the district court, or under its supervision, of the priorities of right to water in the respective irrigation districts; said section 34 provides for appeal from the court's decree and orders in that adjudication, to the supreme court. We infer this from the provisions of the section and connection in which it appears; from the fact that it provides that the action mentioned shall be governed by the *laws then in force regulating appeals;* and from the further fact that it authorizes the supreme court to make "such order and rule" concerning such appeals as may be deemed proper.

The reference to *laws in force* must, for obvious reasons, mean *general laws;* but there was not at that time, and there is not now, any *general law* providing for appeals from the decisions and orders of boards of county commissioners; sections 547 and 548 of the General Statutes referred to, are confined to appeals from orders disallowing claims against a county. Again, it would be an extraordinary proceeding for the general assembly to

delegate to this court the power to legislate concerning matters not pending before us or connected with procedure herein; such power would have to be clearly and unequivocally conferred.   We think the clear intent was to authorize the court to make rules and orders not inconsistent with law, regulating appeals taken to or pending herein in the particular proceeding mentioned.

.·'We may agree fully with counsel that a review of the decision of the board of county commissioners in the premises ought to be provided for. · There is opportunity for gross injustice to the ditch owner on the one hand, or the consumer on the other, according as the interest or inclination of the commissioners might dictate.   But *our* duty is to construe the statute, not to enact it; and as the law now stands, no appeal from such decisions is provided for.   Therefore, respondent's attempted appeal from the order mentioned in this case, fixing the rates, was of no avail.

*Seventh.*   Under the statute, before relator became entitled to the water claimed, he was required, as we have already seen, to pay or tender the proper price therefor.

The petition avers that he made this tender on the 5th of May, but that respondent refused to accept the same, or to furnish the water; it further avers that relator has at all times since been and then was ready and willing to pay the sum fixed by the commissioners; and that he then in court renewed such tender.   In reply to these averments respondent, by his answer, denies that on the 5th day of May, 1884, such tender was made, but admits that on the 31st day of May relator presented his application, and accompanied the same with the tender of $1.50 per inch, the price established by order of the commissioners.   If the denial stood by itself, it would probably be bad as a negative pregnant; but the admission obviates all doubt.   We have already concluded that under the pleadings the application was made in apt time, and

that relator was entitled to the right of user conferred by the statute. But if his *application* was in time, his *tender* was also in time; under our view of the answer, stated in the third division of this opinion, it is of no consequence whether these acts were performed on the 5th or on the 31st day of May.

*Eighth.* It is asserted that this action ought not to be maintained, because a petition and affidavit were not filed as required by section 334 of the Civil Code. Relator designates the paper filed as "his petition and affidavit;" and the matters therein stated are attested by the usual verification. The petition for *mandamus* must state all of the facts necessary to justify granting the relief demanded; no other or different matters are required to be set out in the affidavit, and there would seem to be no good reason why a proper attestation of the former under oath is not sufficient. The statute, it is true, uses the expression "petition and affidavit," but we do not think that this necessarily requires the filing of two separate papers; had relator filed his petition unverified, and then filed an exact copy thereof, sworn to, calling the latter an affidavit, no objection could have been taken. We think that, if he chooses to avoid incumbering the records with the extra paper, and properly verifies his petition, it is a compliance with the statute. It will be observed that this proceeding is unlike attachment and other proceedings wherein matters are required to be stated by affidavit which need not appear in the original complaint.

We are of opinion that the demurrer challenging respondent's various defenses was correctly sustained. The judgment is therefore affirmed.

*Affirmed.*