## [No. 3680.]

The People ex rel. Standart, Assignee of Crippen, Lawrence & Co., v. The Farmers High Line Canal & Reservoir Co.

1. Mandamus—Water Rights.

Mandamus will lie to compel a ditch company to furnish water to a consumer who is entitled to the water for irrigation purposes under a contract, as well as when the right is conferred by statute.

2. Water Rights—Abandonment—Nonuser.

A perpetual right to the use of water from an irrigating ditch, acquired or reserved under a contract, constitutes an easement in the ditch, which cannot be lost by nonuser alone, short of the period of limitation for actions to recover real property.

*Error to the Court of Appeals.*

**This** action was originally instituted in the district court

of Jefferson county by the plaintiff in error Standart, to compel the defendant in error to furnish twenty-five inches of water during the year 1894, to be used on a portion of section 11, township 3 S., range 69 W.   He, as assignee of Crippen, Lawrence & Company, claims title to the land through divers mesne conveyances from one Eli Allen, and the use of the water as an appurtenant thereto.   The facts that are material to a determination of the case, as they appear from the pleadings and evidence, are in substance as follows :

Eli Allen and fifteen other farmers, residents of Jefferson county, in 1863 organized a corporation and constructed an irrigating ditch for the purpose of taking water from Clear creek to irrigate their lands.   In 1872 the ditch and the rights of the company passed to the Golden City & Arapahoe Ditch Company, a corporation organized by the stockholders of the old company.   The capital stock consisted of 100 shares, each of which represented twelve inches of water.   Eli Allen was the owner of seven and one half shares of this stock.   On March 20, 1872, the company leased the ditch to William Bomberger, Francis Gallup and William A. Rand, parties doing business as William Bomberger & Company, during the existence of its charter and any renewal thereof, upon condition, among other things, that they would enlarge the ditch to not less than three times its previous capacity ; and also construct, by or before June 1, 1872, a branch of said ditch, called the South Branch, beginning at Dry creek and following the most practicable route, and ending at the county line ; and also to furnish, free of all charges to each of the stockholders, twelve inches of water for each share of stock held by him.   Thereafter, within the specified time, the South Branch was constructed.   It extended east from Dry creek, and passed north of the land in question, which was known as Eli Allen's "Home Farm." There was also another branch of the ditch constructed east from Ralston creek, and called the Gallup extension.   The lease was recorded in book L., p. 344, of the Jefferson county records.   On March 22, 1873, the following agreement was entered into :

" This indenture made and entered into this 22d day of March, A. D., 1873, by and between the Golden City & Arapahoe Ditch Company, of the county of Jefferson, of the first part, and * * * William Bomberger & Company, of the county of Arapahoe, of the second part, and * * * Eli Allen (and others) * * * stockholders in the said ditch company, and owners of land under said ditch, of the third part;

" Witnesseth, That whereas the said William Bomberger, Francis Gallup and William A. Rand, by their said name and firm style of William Bomberger & Co., by a certain written agreement, made between said Golden City & Arapahoe Ditch Company and the said William Bomberger & Co., on the 20th day of March, A. D. 1872, and recorded on page 344 of volume No. ' L ' of the records of Jefferson county, Territory of Colorado, in the office of the county clerk and recorder of said county, did become the lessees of the right of way and ditch of said company lying in said Jefferson county, and are at this time in possession of said ditch and right of way under and by virtue of said lease ;

" And Whereas, It is desired to make certain other and further agreements for control and management of said ditch, and furnishing the water for irrigation for the lands owned at this time by the said several parties of the third part from the said ditch, as well for the accommodation of the said parties of the first and second part as for the said parties of the third part, severally and to each and every of their several assigns and vendees, lessees and tenants of the said lands as now held severally by said several parties of the third part under said ditch sufficient water from said ditch for the irrigation of the lands now owned or occupied, or cultivated, or which may be hereafter cultivated by him or his assigns as any part of the lands now owned or occupied by him under said ditch upon the terms and conditions hereinbelow set forth, which said lands so hereby intended to be irrigated from said ditch are set forth by the numbers thereof in a schedule annexed hereto and marked ' List of Lands.' Now it is hereby covenanted and agreed on the part of the said

William Bomberger & Company that the said William Bomberger & Company shall pay off all indebtedness and cost necessary to be paid in order to secure the clear and complete right of way of and for said ditch from the head of said ditch to Ralston creek, in said Jefferson county, and to pay the fees of attorneys and counsels now due from said company for legal services in and about the incorporation thereof, and leasing and procuring the right of way by condemnation for said company for said ditch, and shall also pay the said stockholders, to each his proportionate share, the sum of $3,500, on or before the 24th day of March, 1874, and the further sum of $3,500 on or before the 24th day of March, 1875, for which said sums the said William Bomberger & Company shall give to each of said stockholders their promissory negotiable note for the amount of his share thereof, in payment for a transfer by him to said William Bomberger & Company, of his share of stock in said ditch company, and further said William Bomberger & Company shall deliver to said stockholders, for the crop season of 1873, 1200 inches of water, to be delivered in all respects according to the terms of said lease, in full for interest upon said two deferred payments for which said notes are to be given, said notes bearing no interest till due, and at the time of making said notes, said William Bomberger & Company shall issue to each of said stockholders a certificate for water from said ditch for the year 1873, entitling him or her to receive his proportionate share of said 1,200 inches of water from said ditch, to be delivered as aforesaid.

" And the said parties of the third part, each for himself, hereby covenants to and with the said party of the second part, that, upon the making of the said promissory notes and certificates for water, he will assign, transfer, and set over to the said party of the second part all the share or shares or parts of shares owned by him in said ditch company in due form of law, according to the by-laws and usages of said ditch company, and the said party of the first part and the said party of the second part, jointly and severally, for themselves

and each of them, their successors, assigns, transferees and vendees forever, do hereby covenant with the said several parties of the third part, to each severally, and to his or her heirs, executors, administrators and assigns, vendees and transferees of the lands now owned or occupied by him under said ditch, as set forth in said schedule; that each and every of the said parties of the third part, his heirs, executors, administrators, assigns, vendees or transferees of the lands now owned by him as aforesaid, or any part thereof, shall, by this indenture, from and after this date, have the right to receive and have delivered to them and each of them severally from said ditch of said party of the first part, during the crop season of the year A. D., 1873, and every year thereafter forever, so much water as may in fact be necessary and proper to amply irrigate all the lands under said ditch, owned or occupied by him or her, his or her lessees or agents, being part and parcel of the land mentioned in said schedule; at all times from the 15th day of May unto the 15th day of November, in each and every year, said water to be furnished at the rate of $1.00 per inch, subject to all the terms and conditions as to delivery thereof mentioned in said lease for the delivery of surplus water to the stockholders of said ditch company, as therein provided, and to be ordered and paid for in the same manner as therein provided for the ordering and paying for the said surplus water, and subject to the further provision as in said lease, that there (be) sufficient water in Clear Creek available to enable the said parties of the first and second part, or either of them, to furnish the water so required to be furnished. * * * It being the true intent of this indenture that the covenants herein on the part of the parties of the first and second parts touching the furnishing and delivery of said waters for said lands shall run with the right of way and ditch of said party of the first part, and the rights therein of the party of the second part, and with such lands forever, and obligatory upon, and in favor of the owners and proprietors of said ditch and lands; and that by virtue thereof the owners of such lands shall, at all times enjoy of having and receiving

from said ditch all waters necessary for the irrigation of said lands and none others, at the said price of one dollar per inch per season, on the terms and conditions aforesaid, any change in the ownership, control or management of said ditch notwithstanding."

We have stated so much of the contract as is material to the questions now presented. The portion omitted provided, in case Bomberger & Company, or whoever might be in control or management of the ditch should refuse to comply with the terms of the contract as to furnishing the water, that upon demand, and tender of the price, it should be lawful for the parties entitled to the water to draw from said ditch and take such water as they might be entitled to at the time of such tender or payment. A schedule of the land referred to was attached to this contract, which included the Eli Allen land. This contract was recorded in the office of the clerk and recorder of Jefferson county on May 14, 1873. Under and in pursuance of this agreement, Bomberger & Company purchased all the corporate stock and continued to operate the ditch. Thereafter they organized two additional companies, namely, the " Gallup Ditch Company " which took title to the Gallup extension; and the " Eureka Ditch Company," which took title to the extension east from Dry creek, called the South Branch, and which was thereafter known as the Eureka. On March 26, 1876, all these companies, being under the same management, were consolidated under the name of the Arapahoe Canal Company. Bomberger & Company transferred all their right and title to the new company, which was thereupon vested with the title to all the canals, including the South Branch. On December 3, 1879, the Arapahoe Canal Company conveyed all the ditch property to William D. Todd as trustee, to secure an indebtedness of about $8,000 due Michael Spangler. On April 8, 1880, this trust deed was foreclosed and the property bought in by Spangler. On April 19, 1880, he conveyed all the ditch property to the Golden Canal Company, organized by Lothrop, Wolfe and one William Allen. This company entered into

possession of, and operated, the entire system, until January 11, 1886, when it conveyed the main canal to the Farmers High Line Canal & Reservoir Company, the respondent herein; which company not only took the title with full notice of the Bomberger contract, but expressly assumed its obligations and agreed to furnish the schedule water, and commenced furnishing the same, at $1.00 an inch, to all parties named in the list.

Under and in pursuance of this contract, water was delivered to Allen through the Arapahoe ditch and the Eureka branch from 1873 to 1880.   This water was conducted from the Arapahoe ditch to the Eureka through a conduit called Dry creek.   Some time during the early eighties (the testimony being somewhat uncertain as to the time), by reason of the washing out of the dam in Dry creek, the Eureka thenceforth received its supply of water through two other ditches in that locality, called the Reno and Juchem ditches, which took water directly from Clear creek; and Allen continued to irrigate his land with water supplied in this manner until 1886.   In 1883 the Reno and Juchem ditches were purchased by the Golden Canal Company, and they and the Eureka ditch came under the same management as the main ditch, and were operated as a part of its system until respondent company purchased the main ditch in 1886.   This purchase did not include the Juchem, Reno and Eureka ditches.   They were reserved by the then owners, and these last three were consolidated and sold to another party.

The testimony is conflicting as to the source from which Allen received water to irrigate his land in 1886 ; but in 1888, 1889, 1890, he took water from the main ditch, after tendering the price, by virtue of the omitted portion of the contract which we have above referred to.   In 1891 he received therefrom fifty inches of water, for which he paid respondent company $1.00 per inch.   In 1892 he again took water from the main ditch, upon his demand and tender therefor being refused. In 1893 no water was used upon the land.   On March 15, 1894, plaintiff in error made a demand in writing of respond-

ent company for thirty-two inches of water, to be used to ir-rigate the Allen land, and tendered $32.00 in payment of the same. Upon the refusal of the company to comply with this demand, plaintiff in error commenced this action. It is averred in the petition, and not denied in the answer, that on May 15, 1894, there were growing crops of grass, alfalfa, clover, vege-tables and cereals, and a large number of fruit trees on the land that needed water; that the full amount of twenty-five inches was necessary for the protection and life of the same; and unless said water was obtained from the defendants the crops would be completely destroyed, and that no complete and adequate compensation could be rendered to plaintiff for such damages in an ordinary suit at law. The only attempted denial, by respondents, of any of these averments is as follows :

"And the respondent further answering denies that the amount of water now claimed is needed or required to irrigate said lands. * * * And as to whether the amount claimed or any other amount is necessary to irrigate the lands in contro-versy this respondent has no knowledge or information upon which to base a belief, and therefore denies the same."

The defendant in error admitted the contract as set forth, but averred that Allen and his grantees had forfeited what-ever right or claim they had under and by virtue thereof, by reason of his failure to demand or use water from the main ditch for several years; and had obtained water from the Eureka ditch after its source of supply was changed from the Arapahoe ditch to the Juchem and Reno ditches that took water direct from Clear creek; and that in the intervening time, the company had obligated itself to deliver all the water flowing in its ditch to other parties. His right to the relief demanded was contested mainly on this ground.

The district court found the issues in favor of plaintiff in error, and entered judgment that a peremptory writ issue, com-manding the respondent to forthwith furnish to relator twenty-five inches of water from its canal for irrigation of the lands described, upon the payment of $25.00 into court for the use of respondent, upon its compliance with this order. On error

Vol. xxv—14

to the court of appeals this judgment was reversed, upon the sole ground " that mandamus was not an appropriate remedy to enforce the case made by the proof." *The Farmers High Line Canal and Reservoir Company v. The People ex rel. Standart*, 8 Colo. Ct. App. 246. To this judgment of the court of appeals Standart prosecutes this writ of error.

Messrs. Gilmore & Pershing, for plaintiff in error.

Mr. S. A. Osborn and Mr. G. W. Taylor, for defendant in error.

Mr. Justice Goddard delivered the opinion of the court.

Upon the facts presented by this record we should entertain no doubt of the right of plaintiff in error to the relief demanded were it not so vigorously challenged by the able jurist who delivered the opinion of the court of appeals. Because of the high regard we justly entertain for his legal learning, his views have occasioned the only difficulty that we have experienced in arriving at a satisfactory conclusion as to the availability of this remedy. A critical examination of the opinion, however, satisfies us that the conclusion reached is due to a misapprehension of the object of the suit and the questions properly in issue. It is conceded that it is possible that enough was alleged in the petition to warrant these proceedings ; and, disregarding the divers defenses set up by the company, since in its opinion the decision of the case did not turn upon the sufficiency of these pleas, or the adequacy of the proof to support them, the court of appeals denied the right to relief by mandamus because " the testimony offered * * * and the judgment of the court, all warrant us to reach the conclusion the sole purpose and object of the suit was to obtain a judicial construction of the contract and an establishment of a perpetual right in Eli Allen and his grantees to water from the canal company, and not to procure temporary relief from a breach of the contract on the part of the corporation."

We do not think that either assumption is justified by the pleadings or evidence in the case. While it is true that the contract is set out *in hæc verba* in the complaint, and is relied on as the basis of plaintiff's right to demand and receive water from the company's ditch, its language is plain and unambiguous, and its validity or meaning was in no way denied or questioned by respondent. On the other hand, it was expressly admitted upon the trial that the company assumed its obligations and agreed to, and did, commence furnishing water to all parties named in the list; and that it is still furnishing what is called schedule water to the farmers under the ditch who have bought it regularly without lapse from the company, since it had taken charge of the ditch in 1886. Therefore, its construction, judicial or otherwise, was not involved, nor in any way necessary to a determination of the rights of the respective parties in the case; and although the right to the use of water for the land in question thereby conferred is a perpetual right, the object of the present action, as shown by the demand and tender, the allegations of the complaint that the amount of water demanded was necessary for the life and protection of. the crops during the season of 1894, and the judgment of the court below commanding respondent company to forthwith furnish twenty-five inches of water on the payment of $25.00 (being the price fixed in the contract for that quantity of water for one season) was clearly to procure temporary relief from a breach of contract on the part of the company.

It is also an erroneous assumption that, with a change of parties and the character of the suit, the end sought in this action is exactly like that which was striven after in the suit of White against the canal company, reported in 5 Colo. App. 1, and 22 Colo. 191. In that action the company sought to enjoin White, who was the owner of a right under the contract similar to that of Eli Allen and others who originally owned the ditch, from availing himself of certain provisions contained in that portion of the contract we have omitted, and which, as we have before stated, provided that parties

entitled to water under the contract, in case those who were in control or management of the ditch should refuse to furnish water upon demand and tender, might draw therefrom and take such water as they were entitled to.

It will be seen by reference to these opinions that the sole and only question there determined was that that portion of the contract was against public policy and inconsistent with the statute of 1887, which provided for the regulation and distribution of water, and therefore void; and the question of his right to have water furnished under the contract by respondent company was not involved or determined.

The contract being admitted, and consequently established, and the assumption of its obligation by respondent company conceded, it only remains to determine whether the right to the water for the land in question has been lost by abandonment. In other words, whether Allen, by continuing to receive water from the Eureka ditch after that ditch ceased to be supplied from the Arapahoe ditch, and obtained its water from the Juchem and Reno ditches directly from Clear creek; and the sale by the respondent to, and use by, other parties in the mean time, of the water carried in the old Arapahoe ditch, forfeited or lost his right to demand and receive water under the contract. As said by the court of appeals:

" In reality, there was nothing else litigated, and nothing else towards which any proof was offered."

This question the court of appeals expressly declined to pass upon, regarding it as a matter not proper to be determined in a mandamus proceeding. Whether or not the company could evade its duty to plaintiff, and successfully defeat this remedy by showing that it had obligated itself to furnish the water to which he was entitled to third persons, it is unnecessary to determine, since, as stated by the court of appeals:

"No question was made in regard to parties, nor was there any proof offered by the company to show that all the water which they had diverted and transported had been bought and delivered to consumers.

Certainly with the claims of third parties eliminated, the attempted defense presents no issue that may not be determined in this proceeding. As a part consideration for the sale of his interest in the original ditch to Bomberger & Company it was expressly provided that Allen should have delivered through the ditch " forever, so much water as may in fact be necessary and proper to amply irrigate all the lands * * * mentioned in said schedule; at all times from the 15th day of May unto the 15th day of November in each and every year * * * at the rate of $1.00 per inch. * * * That the covenants * * * touching the furnishing and delivery of said waters for said lands shall run with the right of way and ditch * * * and with said lands forever."

The right, therefore, that Allen acquired (or rather reserved) under the contract, was a perpetual right to have carried by the ditch, and furnished to him, sufficient water to irrigate the lands then owned by him and referred to and described in the schedule. This right constituted an easement in the ditch. Such a right cannot be lost or abandoned by nonuser alone, short of the period for the limitation of actions to recover real property.

" If the easement has been acquired by deed, no length of time of mere non-user will operate to impair or defeat the right. Nothing short of a use by the owner of the premises over which it was granted, which is adverse to the enjoyment of such easement by the owner thereof, for the space of time long enough to create a prescriptive right, will destroy the right granted." Washburn on Easements & Servitudes (4th ed.), p. 717.

Under the averments of the answer, and from the evidence introduced, there appears at most a nonuser by Allen of the water for the period of five years. Aside from this there was no act on his part that indicated an intention to abandon his right. Conceding, therefore, all that is claimed by respondent in this regard, the original right of Allen to receive water under the contract is unaffected; and we cannot see wherein this case differs in any essential feature from the following

cases, in which this court has held that mandamus is the appropriate remedy. *Golden Canal Company v. Bright,* 8 Colo. 144; *Wheeler v. Northern Colo. Ir. Co.,* 10 Colo. 582; *Townsend v. Fulton Ir. Ditch Co.,* 17 Colo. 142; *Combs v. Agricultural Ditch Co.,* 17 Colo. 146.

These decisions announce with clearness the reasons why mandamus will lie to compel the delivery of water where there exists a correlative duty and right between a ditch company and consumer. It is unnecessary to repeat them here. The controlling considerations were that the status of the canal companies, they being *quasi*-public agents for transporting water for hire, imposed upon them a *quasi*-public duty, and that they were not in the attitude of an individual, contracting for the sale or use of his private property, and the inadequacy of any other remedy to coerce the performance of this duty in time to afford effective relief. As expressed in *Golden Canal Co. v. Bright, supra :*

" In the first place, however, the relation of the parties should be remembered. Relator does not occupy the attitude merely of one in whose favor an ordinary right of action accrues by reason of the tortious conduct of another ; nor merely of one who may recover damages for the violation of a contract. By statute, a peculiar right in favor of relator, and a special obligation on the part of respondent, are created ; it may be true, as counsel for the relator assert, that this is one of the trust relations referred to in section 333 of the code, the provision designating the circumstances under which the writ may issue."

While the right recognized in these cases was one conferred by statute, which the relator, upon the performance of certain conditions precedent, was entitled to enjoy, we are unable to perceive any reason why the same right, when conferred by contract, is not equally susceptible of enforcement in this manner, when clearly established, as in this case, and the consequences of its denial are the same.

A further reason assigned by the court of appeals for denying this remedy is that it did not know what, if any, crops

were growing on the land during the year 1894 ; and because there was no evidence that a crop would be lost if the water was not delivered. An inspection of the pleadings removes this objection. It is averred in the petition that at the time of the demand there were growing crops and a large number of fruit trees on the land in question, and that these would be completely destroyed if the full amount of water demanded was not furnished by the company. The only denial made by respondent was as to the amount of water needed and required to irrigate them. Upon this issue the evidence introduced by plaintiff was to the effect that the full amount demanded was needed ; and there was no evidence to the contrary.

As we construe the pleadings in this case, and understand the evidence introduced, the right of plaintiff in error to have water furnished by respondent, under the contract, is clearly established ; and no controverted question of fact is presented that may not be determined in this proceeding ; and we are forced to the conclusion that the reasons assigned by the court of appeals for reversing the judgment of the district court are not well founded. Its judgment is accordingly reversed, and the cause remanded, with directions to affirm the judgment of the district court.

*Reversed.*