[No. 5323.]
[No. 2963 C. A.]

THE FARMERS' HIGH LINE CANAL AND RESERVOIR COMPANY v. THE NEW HAMPSHIRE REAL ESTATE COMPANY.

1. Water Rights — Irrigation Companies — Uses of Water — Ditches—Easements—Creation—Express Grant.

The owners of an irrigation ditch and their lessees in a contract covenanted jointly and severally, for themselves and each of them, their successors, assigns, etc., to furnish water for the lands of certain adjoining landowners, their heirs, executors, ad-

ministrators, assigns, etc., for a certain price. The contract further provided that the covenants on the part of the owne"s and the lessees of the ditch touching the furnishing of the water should run with the right of way and ditch and with the lands, forever, and be obligatory upon and in favor of the owners and proprietors of the ditch and lands; and that, by virtue thereof, the owners of the land should, at all times, receive from the ditch all the necessary water for the irrigation of the lands, any change in the ownership, control or management of the ditch notwithstanding. The contract was duly recorded. Held; that such contract created an easement and covenants running with the land, binding upon the owners of the ditch.—P. 476.

2. **Real Property—Contracts—Irrigation Ditches—Easements— Bona Fide Purchasers—Notice—Records.**

The recording of a contract creating an easement in favor of certain real estate and binding upon the owners of an irrigation ditch, and all leases, deeds, or contracts of or relating to the ditch or the land, being contracts relating to real estate, under the statute, constitutes constructive notice to all the world of the contents thereof and the rights of the parties thereto. —P. 478.

3. **Real Property—Covenants—Running with Land.**

Where there is the requisite privity of estate and the covenant is connected with or concerns the land conveyed, a covenant imposing a burden will run with the land as readily as one conferring a benefit.—P. 478.

4. **Real Property—Water Rights—Contracts—Irrigation Ditches —Easements—Abandonment.**

A perpetual right reserved in a contract to have water carried by a ditch and furnished to the owner of certain lands in sufficient quantity to irrigate them, constitutes an easement in the ditch, which cannot be lost by abandonment or nonuser alone, short of the period for the limitation of actions to recover real property, as such easement is a freehold estate.—P. 479.

5. **Same.**

The fact that a landowner having an easement in a ditch, which entitled him to be supplied with water therethrough, used some other method of conveying water to his land for a time, does not constitute an abandonment thereof.—P. 480.

6. **Same—Covenant Running with Easement.**

A covenant running with an easement in favor of land, whereby the owners of a ditch are obligated to furnish water therethrough for the owners of the land, is personal, and a burden upon the successive owners of the ditch.—P. 480.

7. **Same—Appurtenant Easement—Practice in Civil Actions—Right of Action.**

The perpetual right of a party and his heirs and assigns to have the water for his land carried through a certain ditch is an easement appurtenant to the land in whosesoever hands it may be, so that, where the easement and plaintiff's ownership of the land are established, there is the requisite privity of estate to entitle the plaintiff to sue subsequent purchasers of the ditch for failure to supply water to such land.—P. 480.

8. **Same—Landlord and Tenant—Landlord Entitled to Sue—Failure to Supply Water to Tenant.**

Where the owner of land, which was entitled to a supply of water through an irrigation ditch, leased the land, covenanting in the lease to supply sufficient water for irrigation, such owner is the real party in interest, and entitled to sue for a failure of the ditch owners to deliver the water necessary for the raising of crops on the land, whereby the lessees were unable to pay the stipulated rent to the owner.—P. 481.

9. **Same—Judgment—Res Judicata.**

Where an owner of land, which was entitled to a supply of water through an irrigation ditch, leased the land, covenanting in the lease to supply sufficient water to raise crops, a judgment recovered by such owner against the ditch owners for failure to supply sufficient water to raise the crops, whereby the lessees were unable to pay the rent, will be a bar to any action by the lessees for the same failure.—P. 481.

10. **Appellate Practice—Exclusion of Evidence—Harmless Error.**

Where the admission of all the evidence offered would not have changed the result, its exclusion is harmless error.—P. 482.

*Appeal from the District Court of Jefferson County.*
*Hon. James E. Garrigues, Judge.*

Action by The New Hampshire Real Estate Company, a corporation, against The Farmers' High Line Canal and Reservoir Company, a corporation, to recover damages for failure to furnish water. From a judgment for plaintiff, defendant appeals.

*Affirmed.*

Messrs. Orahood & Hurlbut, for appellant.

Mr. George W. Taylor, for appellee.

Mr. Justice Caswell delivered the opinion of the court:

Action by appellee, as plaintiff below, to recover damages from appellant, as defendant below, on account of failure of defendant to furnish water for irrigating appellee's land during the season of 1895.

The complaint sets forth, amongst other things, plaintiff's title to said land, alleging that same was derived by mesne conveyances from Eli Allen, who acquired title from the United States prior to the transactions set forth in the complaint; that prior to March 20, 1872, The Golden City and Arapahoe Ditch Company had been incorporated as a mutual ditch company, and as such was the owner of a certain ditch for irrigation purposes, taking its water from Clear creek; that the said Allen was one of the stockholders in said ditch company, and prior to March, 1872, had appropriated water from Clear creek sufficient to irrigate about eighty acres of land, of which the thirty acres involved in this controversy formed a part; that about the 22nd day of March, 1873, The Golden City and Arapahoe Ditch Company, as first party, and William Bomberger & Company as second party, and Eli Allen and about fourteen other persons, stockholders in the said ditch company, as third parties, in consideration of furnishing in perpetuity and conveying through its ditch, as then constructed, water for irrigation of the lands of the said third parties, then owned severally by them, did enter into a certain contract with the said Allen and other stockholders, recognizing a certain lease of the ditch theretofore made and that portion of such contract relied upon in this suit is as follows:

"This Indenture, made and entered into this 22nd day of March, A. D. 1873, by and between The Golden City and Arapahoe Ditch Company, of the

county of Jefferson, of the first part, and    *    *    *
William Bomberger & Company, of the county of
Arapahoe, of the second part, and    *    *    *    Eli
Allen (and others)    *    *    *    stockholders in the
said ditch company, and owners of land under said
ditch, of the third part;

"Witnesseth, That whereas the said William
Bomberger, Francis Gallup and William A. Rand,
by their said name and firm style of William Bom-
berger & Co., by a certain written agreement, made
between said Golden City and Arapahoe Ditch Com-
pany and the said William Bomberger & Co., on the
20th day of March, A. D. 1872, and recorded on page
344 of volume No. "L" of the records of Jefferson
county, territory of Colorado, in the office of the
county clerk and recorder of said county, did become
the lessees of the right of way and ditch of said com-
pany lying in said Jefferson county, and are at this
time in possession of said ditch and right of way
under and by virtue of said lease;

"And, whereas, it is desired to make certain
other and further agreements for control and man-
agement of said ditch, and furnishing the water for
irrigation for the lands owned at this time by the
said several parties of the third part from the said
ditch, as well as for the accommodation of the said
parties of the first and second part as for the said
parties of the third part, severally and to each and
every of their several assigns and vendees, lessees
and tenants of the said lands as now held severally
by said several parties of the third part under said
ditch sufficient water from said ditch for the irriga-
tion of the lands now owned or occupied, or culti-
vated, or which may be hereafter cultivated by him
or his assigns as any part of the lands now owned
or occupied by him under said ditch upon the terms
and conditions hereinbelow set forth, which said

lands so hereby intended to be irrigated from said ditch are set forth by the numbers thereof in a schedule annexed hereto and marked 'List of Lands.' Now it is hereby covenanted and agreed on the part of the said William Bomberger & Company that the said William Bomberger & Company shall pay off all indebtedness and cost necessary to be paid in order to secure the clear and complete right of way of and for said ditch from the head of said ditch to Ralston creek, in said Jefferson county, and to pay the fees of attorneys and counsels now due from said company for legal services in and about the incorporation thereof, and leasing and procuring the right of way by condemnation for said company for said ditch, and shall also pay the said stockholders, to each his proportionate share, the sum of $3,500 on or before the 24th day of March, 1874, and the further sum of $3,500 on or before the 24th day of March, 1875, for which said sums the said William Bomberger & Company shall give to each of said stockholders their promissory negotiable note for the amount of his share thereof, in payment for a transfer by him to said William Bomberger & Company, of his share of stock in said ditch company, and further said William Bomberger & Company shall deliver to said stockholders, for the crop season of 1873, 1,200 inches of water, to be delivered in all respects according to the terms of said lease, in full for interest upon said two deferred payments for which said notes are to be given, said notes bearing no interest till due, and at the time of making said notes, said William Bomberger & Company shall issue to each of said stockholders a certificate for water from said ditch for the year 1873, entitling him or her to receive his proportionate share of said 1,200 inches of water from said ditch, to be delivered as aforesaid.

"And the said parties of the third part, each for himself, hereby covenants to and with the said party of the second part, that, upon the making of the said promissory notes and certificates for water, he will assign, transfer, and set over to the said party of the second part all the share or shares or parts of shares owned by him in said ditch company in due form of law, according to the by-laws and usages of said ditch company, and the said party of the first part and the said party of the second part, jointly and severally, for themselves and each of them, their successors, assigns, transferees and vendees forever, do hereby covenant with the said several parties of the third part, to each severally, and to his or her heirs, executors, administrators and assigns, vendees and transferees of the lands now owned or occupied by him under said ditch, as set forth in said schedule; that each and every of the said parties of the third part, his heirs, executors, administrators, assigns, vendees or transferees of the lands now owned by him as aforesaid, or any part thereof, shall, by this indenture, from, and after this date, have the right to receive and have delivered to them and each of them severally from said ditch of said party of the first part, during the crop season of the year A. D. 1873, and every year thereafter forever, so much water as may in fact be necessary and proper to amply irrigate all the lands under said ditch, owned and occupied by him or her, his or her lessees or agents, being part and parcel of the land mentioned in said schedule; at all times from the 15th day of May unto the 15th day of November, in each and every year, said water to be furnished at the rate of $1.00 per inch, subject to all the terms and conditions as to delivery thereof mentioned in said lease for the delivery of surplus water to the stockholders of said ditch company, as therein provided,

and to be ordered and paid for in the same manner as therein provided for the ordering and paying for the said surplus water, and subject to the further provision as in said lease, that there (be) sufficient water in Clear creek available to enable the said parties of the first and second part, or either of them, to furnish the water so required to be furnished. * * * It being the true intent of this indenture that the covenants herein on the part of the parties of the first and second parts touching the furnishing and delivery of said waters for said lands shall run with the right of way and ditch of said party of the first part, and the rights therein of the party of the second part, and with such lands forever, and obligatory upon, and in favor of the owners and proprietors of said ditch and lands; and that by virtue thereof the owners of such lands shall at all times enjoy of having and receiving from said ditch all waters necessary for the irrigation of said lands and none others, at the said price of one dollar per inch per season, on the terms and conditions aforesaid, any change in the ownership, control or management of said ditch notwithstanding.'' A schedule of the lands referred to was attached to the contract and included the land involved in this action.

That the said contract is relied upon by the plaintiff in this action to entitle it to recover the damages for which this suit is brought. That one Stephen H. Standart, as the assignee of Crippen, Lawrence & Company, had executed two leases to certain portions of the land involved herein, then owned by him as such assignee, in which leases it was provided that he should furnish water for irrigation purposes during the season of 1895. That because of the failure of the defendant to furnish water according to the terms of the contract hereinabove set forth, the lessees were unable to raise their

crops and unable to pay for the land the rent so agreed to be paid under the terms of the lease, and that he was thereby injured in the sum of one thousand two hundred and thirty dollars ($1,230.00), besides interest. That after the beginning of said suit, said land was sold to the plaintiff in this action and the said assignee assigned to him all rights to recover against the defendant. The above contract sets forth in substance the consideration upon which it rests, and it further appears that the contract was performed and that the construction of the south branch, afterwards the Eureka ditch, as provided for in the original lease, was completed within the specified time. That the lease and contract were duly recorded in the records of Jefferson county. It is further set forth in the complaint that the defendant, in about 1895, became the owner of The Golden City and Arapahoe Ditch Company's ditch, and thereby assumed all the liabilities and burdens imposed by virtue of the lease and contract for the benefit of Eli Allen, his heirs and assigns.

The various defenses of the defendant in substance deny any liability by virtue of said contract or otherwise, and allege that the said Allen, long prior to its ownership, had abandoned all his rights and interest in the said ditch and especially denies plaintiff's right to recover under its complaint, because defendant was not a party to the leases between plaintiff and his lessees and is not bound thereby.

There was trial to a jury resulting in a verdict of three hundred and forty dollars and twenty cents ($340.20). Judgment was entered thereon and the case brought to this court on appeal. We have stated the facts and contents of the pleadings of this case somewhat briefly for the reason that practically all the questions involved here were before this court in the case of the *People ex rel., etc., v. The Farmers'*

*High Line Canal & Res. Co.,* 25 Colo. 202.  In the latter case the matters in controversy were stated very fully and it is unnecessary to again give the history of the litigation over the so-called Bomberger contract.

The first question presented by appellant concerns the right of the plaintiff below to recover in this action, and it is claimed that no suit will lie against the defendant because it was not a party to the lease or contract.  In support of this contention it cites *Knowles v. Leggett,* 7 Colo. App. 265.  The case is not in point.  Examination of that case discloses the fact that there was no covenant running with the easement involved in that case and no privity between Leggett and the ditch company. That Leggett's contract was with Knowles, to whom he should look for damages for the breach thereof. In the case at bar there can be no question that an easement was reserved in the ditch and that by the contract above set forth covenants were expressly created running with this easement and which covenants imposed a burden upon the owner of the ditch, whosoever the same might be, forever, and for the benefit of the lands and each and every part thereof owned by the parties of the third part, their heirs and assigns forever.  The contract expressly provides that it is desired to make agreements for the control and management of the ditch and "furnishing the water for irrigation for the lands owned at this time by the said several parties of the third part from the said ditch, as well as for the accommodation of the said parties of the first and second part for the said parties of the third part, severally and to each and every of their several assigns and vendees, lessees and tenants of the said lands as now·held severally by said several parties of the third part under said ditch sufficient water from said ditch for

the irrigation of the lands now owned or occupied, or cultivated, or which may be hereafter cultivated by him or his assigns as any part of the lands now owned or occupied by him under said ditch upon the terms and conditions hereinbelow set forth,'' and the contract further provides in consideration of the transfer by the third parties to the first and second parties all the shares of stock owned by them in the ditch that the first and second parties ''jointly and severally, for themselves and each of them, their successors, assigns, transferees and vendees forever, do hereby covenant with the said several parties of the third part, to each severally, and to his or her heirs, executors, administrators and assigns, vendees and transferees of the lands now owned or occupied by him under said ditch, as set forth in said schedule; that each and every one of the said parties of the third part, his heirs, executors, administrators, assigns, vendees or transferees of the lands now owned by him as aforesaid, or any part thereof, shall, by this indenture, from, and after this date, have the right to receive and have delivered to them and each of them severally from said ditch of said party of the first part, during the crop season of the year A. D. 1873, and every year thereafter forever, * * * at all times from the 15th day of May unto the 15th day of November, in each and every year, said water to be furnished at the rate of $1.00 per inch, * * *''

As if to make the meaning of the contract doubly clear it is further said: ''It being the true intent of this indenture that the covenants herein on the part of the parties of the first and second parts touching the furnishing and delivery of said waters for said lands shall run with the right of way and ditch of said party of the first part, and the rights therein of the party of the second part, and with such lands forever, and obligatory upon, and in favor of the owners

and proprietors of said ditch and lands; and that by virtue thereof the owners of such lands shall, at all times enjoy of having and receiving from said ditch all waters necessary for the irrigation of said lands and none others, at the said price of $1.00 per inch per season, on the terms and conditions aforesaid, any change in the ownership, control or management of said ditch notwithstanding.''

We do not know what stronger terms could have been used to create an easement and covenants running therewith which should be forever binding upon the owners of this ditch. These contracts were recorded. They are contracts concerning real estate and having been recorded, are, by our statutes, made constructive notice to all the world of the contents thereof and the rights of parties thereto. There was, and is, and always will be privity of estate between the owner or owners of the canal and the owner or owners of the land described in said schedule, and each and every portion thereof, so far as the burden and benefits of these contracts are concerned and ''where there is the requisite privity of estate, and the covenant is connected with or concerns the·land or estate conveyed, then a covenant imposing a burden will run with the land as readily as one conferring a benefit.''—11 Cyc., pp. 1089-1090, and many cases cited. The language of the court in *People ex rel., etc., v. Canal Co., supra,* in sustaining the validity of this contract touching the question of abandonment is so clear and conclusive that we quote from that case, ''The right, therefore, that Allen acquired (or rather reserved) under that contract, was a perpetual right to have carried by the ditch, and furnished to him, sufficient water to irrigate the lands then owned by him and referred to and described in the schedule. This right constituted an easement in the ditch. Such a right cannot be lost or abandoned

by nonuser alone, short of the period for the limitation of actions to recover real property.'' Quoting Washburn on Easements the court in that case further says: ''If the easement has been acquired by deed, no length of time of mere nonuser will operate to impair or defeat the right. Nothing short of a use by the owner of the premises over which it was granted, which is adverse to the enjoyment of such easement by the owner thereof, for the space of time long enough to create a prescriptive right, will destroy the right granted.''

It is admitted by the pleadings and the evidence that Eli Allen had such rights in the defendant's ditch at one time and that he owned the land in controversy, but it is alleged that he had abandoned the same by taking his water through the south branch, afterwards called the Eureka ditch, and defendant takes exception to the rulings of the trial court in respect to this question, both as to the admission of evidence and the findings. It hardly seems necessary to again state, as this court so often has stated, that the perpetual right to have water carried by a ditch constitutes an easement in the ditch.—*Wyatt v. Larimer & Weld Irr. Co.*, 18 Colo. 298-307; *People ex rel. Standart v. Farmers' High Line Canal & Res. Co., supra; Irrigation Co. v. Lesher,* 28 Colo. 273. Such an easement is real estate—a freehold estate. —*Wyatt v. Irr. Co., supra.* It was determined in *People ex rel. Standart v. Canal Co., supra,* in the construction of this contract that the right reserved by Allen constituted an easement in the ditch in question. Under the terms of the contract no different conclusion can be reached.

It appears from the record that the south branch, or Eureka ditch, was used at some time by Eli Allen as a lateral in conveying his water from the main canal to his land, but it is not material whether

this was used as a lateral or otherwise. There is no evidence that Eli Allen ever abandoned, by lapse of time or otherwise, his rights in the defendant's canal; nor does it appear that he ever abandoned his water right. He used water through defendant's canal for many years and was prevented for a few years from using water from that source and was obliged to seek other sources; but no showing is made; nor is there any effort to show, that he ever deeded or in any manner conveyed this easement, nor that the same was acquired by adverse possession for the prescriptive period, nor does any intention to abandon it appear by the record. He had the right to use as many ditches or methods of conveying his water to his lands as he might see fit, so far as the question of abandonment is concerned.

But appellant says that if Eli Allen had an easement, such an easement was a burden solely upon the land and not upon the owner. We agree with this, but the covenant running with the easement is personal: "A covenant which runs with the land is a promise, the effect of which is to bind the promisor and his lawful successors to the burdened land for the benefit of the promisee and his lawful successors to the benefited land. According to this the covenant binds the person of the owner of the burdened land, provided he comes by his title legally, and benefits the owner of the benefited land provided he comes by his title legally."—Sims on Covenants, p. 23. It is further claimed that the plaintiff has not connected itself with the title and has not shown privity of estate.

It appears from the record that plaintiff is the owner of the land. As stated, the perpetual right of Eli Allen, his heirs and assigns to have water carried through the ditch, is an easement. His water right was located upon the land described and the defend-

ant was bound to deliver it at said land by means of his easement or right of way in the ditch. To an easement there is a dominant and servient estate. The servient estate in this case is the ditch, the dominant estate is the land of Eli Allen, his heirs and assigns, and the easement is appurtenant to this land in whosesoever hands the same may be. It passes with the land as an appurtenance. We are discussing here solely the ditch right and not the water right, to which much attention was given by appellant. The ownership of the land and the easement under such circumstances being established, it, of course, follows that there was the requisite privity of estate and the plaintiff had the right to bring this suit. This right can be rested solely upon the fact that the defendant purchased the canal burdened with the easement and covenant running therewith for the benefit of the owner of the land to which the easement is appurtenant.

Appellant seems to claim that the action could not be for damages. The case of *Knowles v. Leggett, supra,* was for damages for breach of contract. No rule is pointed out to us which prevents proper parties from bringing an action for damages for breach of a contract or of a covenant. The plaintiff in this case was the person injured and the party in interest. The judgment in this case constitutes a bar *under the circumstances* to any suit the lessees of the land might bring. It appears from the record that there was a demand for water under the terms of the contract and the tender of payment of the same for that irrigating season, and that damages resulted from the refusal and failure of plaintiff to furnish the water according to the terms of the contract.

The action of the trial court in refusing to admit certain evidence is assigned as error. To discuss

this evidence particularly and the reasons for its refusal would not result in stating any principles of law which would be beneficial in other cases.   Some of it was excluded because it was not proper cross-examination.   As to the most of it we think it was wholly immaterial and was not tending to prove the issues in this case.   We do not observe any of it that would tend to show abandonment by Eli Allen of his rights, or right of way in the ditch, although offered for such purpose.   The admission of all the evidence offered could not, we think, have changed the result, and its exclusion was not error nor prejudicial to appellant.   There was no error in admitting the testimony in support of the damages, and the trial court adopted a proper method, though not the only method, to determine the amount of damages, and submitted the question to the jury under proper instructions.   The damages were not excessive.

We think our views as expressed above, together with the views of this court upon the same contract as expressed in the case of *People ex rel. Standart v. Canal Co., supra,* sufficiently meet all the assignments of error and arguments of appellant.   The case seems to have been carefully tried and the jury correctly instructed as to the law.   Perceiving no error in the record, the judgment is affirmed.   *Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE MAXWELL concur.